TAGGARTS PAPER COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, May 7, 1919.

Eminent domain — appropriation of land by Forest Preserve Board under chapter 130 of the Laws of 1908 — award by Court of Claims for land taken and for damages to other land — constitutional law — holder of option has no claim against State for condemnation — costs — expense of searches.

The State Forest Preserve Board appropriated land of the claimant under chapter 130 of the Laws of 1908 under which statute the claimant asserted its right to take and remove certain spruce timber upon the condition stated.  Provisions of the statute and of the agreement between the parties examined and *held*, that a judgment of the Court of Claims, awarding the claimant a certain sum for the land appropriated and a certain amount as damages to other lands on the ground that claimant was deprived of access to the railroad over the appropriated land, should be affirmed.

The provision of said statute giving the claimant the right to take and remove timber upon the conditions stated is not an invasion of said claimant's constitutional rights.

One to whom the claimant gave an option to purchase the land appropriated within a certain period had no interest in the land itself and no claim against the State for its condemnation.

The statute may properly deny costs in condemnation cases.

The claimant in this case is not entitled to be reimbursed for counsel fees and the costs of experts in the woods but might have been entitled to an allowance for the cost of searches if it had furnished a definite statement thereof.

APPEAL by the claimant, Taggarts Paper Company, from part of a judgment of the Court of Claims, entered in the office of the clerk of said court on or about the 9th day of July, 1918, and also from a supplemental judgment of said court entered on or about the 19th day of November, 1918, awarding compensation and damages to the claimant for an appropriation of lands.

*Moot, Sprague, Brownell & Marcy* [*Adelbert Moot* of counsel; *William L. Marcy* and *H. Z. M. Rodgers* with him on the brief], for the appellant.

*Charles D. Newton,* Attorney-General [*Adelbert F. Jenks, Deputy Attorney-General,* of counsel], for the respondent.

JOHN M. KELLOGG, P. J.:

Claimant owned a tract of 17,000 acres of wild land in Herkimer and Lewis counties. The Herkimer land, 11,897 acres, was appropriated by the Forest Preserve Board in January, 1909.* Four thousand seven hundred and seventy-nine acres of the appropriated land consisted of lakes, lumbered and burned land; the remainder contained a virgin stand of hardwood and softwood timber. The Court of Claims made an itemized judgment which, among other things, awards $9,558 for the 4,779 acres and $14,800 for damages to the Lewis county lands, on the ground that claimant was deprived of access to the railroad at Fulton Chain over the appropriated land.

We have carefully reviewed the record and find no ground for disturbing the judgment. By the appropriation (subject to the condition about to be mentioned) the State became the absolute owner of the appropriated lands, with the timber thereon, and the claimant was entitled to the value thereof,

---

* See Forest, Fish and Game Law (Gen. Laws, chap. 31; Laws of 1908, chap. 130), §§ 46, 47.— [REP.

and the damages to its other lands, with interest thereon from the time of appropriation, and, unless the amount was agreed upon, it could file a claim in the Court of Claims.

Sections 50–57 of chapter 130 of the Laws of 1908, under which the appropriation was made, gives the former owner the option, upon the conditions therein stated, to remove from the appropriated land certain spruce timber. Whether the conditions of the option were reasonable or unreasonable it is unnecessary to determine, as the option was a mere offer of the State, binding upon it alone. It simply gave the claimant the right to take and remove timber upon the conditions stated, and if the conditions were deemed unreasonable the claimant would not exercise the option. The act, therefore, was no invasion of the claimant's constitutional rights. If the terms of the option were onerous to the claimant, it should have taken the just compensation prescribed by law; but it elected to take the spruce timber upon the terms stated, and if it made a bad bargain it alone is at fault. While the reservation under the option was the voluntary act of the claimant, if the statutory conditions seem unreasonable the court should scrutinize them carefully to be sure that their apparent meaning is the actual meaning. Clearly the claimant is bound by the plain meaning of the agreement under which it removed the timber. The statutory conditions of the option are substantially as follows: A party exercising the option is not entitled to any compensation for the value of his land appropriated, or for any damage caused thereby, until (1) all timber is removed; or (2) the time limit has elapsed or the right to remove further timber has been expressly waived in writing; and (3) the Board is satisfied that no trespass has been committed upon the State lands and " that a cause of action in behalf of the State does not exist against him or them for any alleged trespass or other injury to the property or interests of the State; " and (4) that the rules, regulations and requirements of the Board concerning the use of the streams and property of the State have been observed. Section 52 closes: " Provided, however, that said Board may at any time by its certificate filed with the Comptroller direct the payment to the owner of such land, his legal representatives or assigns, of the compensation

therefor, or a part thereof, at such time, and upon such conditions as may be set forth in the certificate."

Section 55 provides that, where timber is reserved, interest is not payable upon the compensation awarded for the value of such land, or for the damages caused by such appropriation, except as provided in section 49, which provides that interest on a judgment of the Court of Claims shall run from its date until the thirtieth day after its entry. Section 53 provides that the Comptroller shall not draw a warrant for the amount of compensation agreed upon, or for a judgment, until a certificate is filed by the Board to the effect that the owner has not reserved any timber, or that he has complied with the provisions of the statute or has otherwise become entitled to receive the amount of the purchase price, award or judgment.

If we consider that the statute was withholding interest solely for the reason that the State was not in the complete possession and control of the land, and that the claimant was using it for its own purposes, we might feel in this particular case that it was equitable that the damages to the Lewis county land, and the compensation for the burned land, should be paid at once. But it is evident from the statute that not only the value of all of the lands appropriated, but the damage to other land caused thereby, are withheld as security that the claimant will faithfully perform its obligations to the State. In order that the statute shall not work oppressively, we find the provision that the Board may, at any time, pay any part of the compensation or damages upon such conditions as it may prescribe. The value of the reserved timber (under section 57) and the damages caused to other property (under section 54) are to be deducted from the compensation and damages or judgment. While the lumbering is going on, the amount of the actual money which the claimant will receive is unknown, and cannot readily be ascertained by computation, and may be so far considered as unliquidated damages that a denial of interest is not unreasonable. The reserved timber must be removed within ten years, but claimant must file its claim within two years from the appropriation, and may do so immediately, and its compensation and damages may then be determined, and the value of the spruce ascertained and deducted therefrom,

leaving the only uncertainty the claimant's liability for damages. It would then be in a favorable position to apply to the Board for payment upon its judgment, and undoubtedly with or without security that it would not do wrong against the State while lumbering, it would have received quite a part of its judgment. But it had a certain interest in delaying the filing of its claim, as under section 57 the value of the reserved timber is computed at the time its claim is filed, and perhaps the claimant felt that a delay in filing its claim might relieve it for a time from the ever-present danger of forest fires.

We have seen that the statute creates a tribunal before which the claimant might go at any time after its damages were agreed upon or its judgment obtained, and present its claim for immediate payment, and presumably it would have received just treatment. The loss of interest, of which it complains, comes from the express contract which it made with the State and, to quite an extent, from its delay in filing its claim and getting it into judgment and making application to the Board for the consideration of its right to immediate payment of all or a part of the award, upon proper terms.

We are unable to find that the claimant has not been awarded full compensation for all its property and damages. It had given to one Gaffney an option to purchase the tract within ten years at about four dollars per acre, it reserving the softwood timber and the right to remove the same. It claims loss on account of the option from the fact that Gaffney had obtained options on other hardwood lands in the vicinity; that claimant's lands were about two miles distant from the railroad; that the hardwood timber could not be floated down the stream and that Gaffney had an option on a right of way for a railroad across the intervening two miles, making connection with an existing road at Fulton Chain, and proposed to extend the road about twenty-two miles to serve all the lands upon which he might have options, his intention being to get part of the hardwood to market and use the remainder for acid purposes; that he had organized a railroad company, and, in determining whether the option should be exercised, and organizing the scheme, he had expended about $10,000,

and that, if the land had not been condemned, a large profit would have been realized by him from the hardwood timber, which had not theretofore been considered of great value. After Gaffney knew of the condemnation, he served notice upon the claimant that he elected to exercise the option, and later, by assignment, claimant has succeeded to all his rights. If the hardwood timber gave the land a greatly increased value, the claimant, as owner of the fee, was entitled to the value, and presumably has judgment for it. It was awarded about eight dollars an acre for the hardwood timberland. The two miles between the appropriated land and the railroad was denuded land, and that fact, and the probability that any one could obtain a right of way across it, very probably entered somewhat into the valuation given by the court. The record shows that in awarding the consequential damages sustained on account of the Lewis county lands, it was considered that the appropriation of the Herkimer county lands deprived the property of the natural outlet to the railroad at Fulton Chain, the place where the Herkimer lands were most accessible to the railroad. In other words, the court, in fixing the damages, took into consideration the same advantages which Gaffney had in mind when he took his option. This fact, and the other facts, make it quite clear that the court has not overlooked the material facts relating to the value of the condemned property. Notwithstanding the option, the claimant was the owner, and Gaffney had no interest in the land itself and no claim against the State for its condemnation. (*Benedict* v. *Pincus,* 191 N. Y. 377, 382; *Ganss* v. *Guffey Petroleum Co.,* 125 App. Div. 760.) The Gaffney option was given while chapter 130 of the Laws of 1908 was in force and before the appropriation. He and the claimant knew the policy of the State with reference to lumbering in the forest preserve region, and that the land at any time was subject to condemnation, and must have understood that it was very doubtful whether the State would refrain from condemnation if some 30,000 acres of land in the vicinity of these lands were being extensively lumbered for the hardwood. The rights of Gaffney, if any, were conditional upon the continuing right to use the land for the purpose indicated, and probably the claimant was not liable

for any damage to Gaffney by reason of the condemnation. His project was extensive and embraced a large territory aside from the appropriated lands. It was in a promoting stage and had not reached such a condition that there was any certainty as to its result. The moneys expended were a hazard upon a business and upon the chance of the lands being taken by the State. The State must pay the full value of the land and to the parties having the legal interest therein. If Gaffney had any substantial rights, which have resulted in a cause of action, the action would be against claimant and not against the State, and it is futile to consider whether the appellant, as assignee of Gaffney, is liable to itself for damages.

We have held that where land was condemned, and the claimant could not obtain the compensation without filing a search, the cost of the search was a part of the compensation to which he was entitled. (*Burchard* v. *State of New York*, 128 App. Div. 750.) The court was satisfied of the constitutionality of section 274 of the Code of Civil Procedure which denies costs in the Court of Claims. It is not necessary for the claimant to go into the Court of Claims to get compensation for lands appropriated. Resort to the Court of Claims is only had where the amount of compensation is in dispute. Goods are sold upon a *quantum meruit*, but the parties are unable to agree upon the value, and a suit is necessary. Whether or not costs shall be allowed in such a suit is a question of practice, and may be regulated by statute. The costs of the action, if brought, are no part of the just compensation which the vendor is entitled to. Here the costs and expenses have resulted from the fact that there was a disagreement as to the compensation. The statute may properly deny costs in condemnation cases. (*Matter of City of Brooklyn*, 148 N. Y. 107, 109; *Matter of Rapid Transit Railroad Comrs.*, 197 id. 81, 105–110; *Burchard* v. *State of New York, supra*.) If we understand the contention of the appellant with reference to costs, it is that the amount expended by it for searches, counsel fees and experts in the woods should be reimbursed to it by an allowance on the basis of section 3372 of the Code of Civil Procedure. It has given no definite statement of what it

has cost it to obtain searches which are necessary for it to produce before it can receive its payment. If it had, under the *Burchard* case, such allowance might be made as a part of its damages; but as to the other matters claimed it is not entitled to relief. No allowance can be made for searches, because the facts with reference to them do not appear. The judgment should, therefore, be affirmed, with costs.

Judgment unanimously affirmed, with costs.