[L.A. No. 30371. In Bank. Mar. 6, 1975.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v. JOHN M. MILLER, Defendant and Appellant.

## COUNSEL

James E. Miller, Crake, Ward, Whittemore, Aguirre & Seidenwurm and Gideon Kanner for Defendant and Appellant.

Robert G. Berrey, County Counsel, and William C. George, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**CLARK, J.**—We determine whether the owner of an unexercised option to purchase real property has a right to compensation when the optioned property is taken through the power of eminent domain.

For valuable consideration, appellant acquired an option to purchase property. However, before the option had been exercised, respondent county filed a condemnation action to acquire the land. (Code Civ. Proc., § 1237 et seq.)[1] Appellant filed an answer in the action (Code Civ. Proc.,

---

[1]After summons issued, appellant attempted to exercise his option, giving notice to the optionor. However, his attempt was of no material legal effect. Section 1249 of the Code of Civil Procedure provides in pertinent part: "For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons . . ." Because appellant's attempted exercise followed the issuance

§ 1246), alleging the existence of his option and seeking compensation to the extent the land's fair market value exceeds the option exercise price.

Respondent's motion for summary judgment was granted on the ground appellant had no compensable interest in the property. In reaching this decision Judge Froehlich thoughtfully declared: "[I] am having a little trouble here because we all know that people who obtain options on property think they have an interest in the property. As a matter of fact, sometimes the acquisition of an option to acquire real property can be an alternative way of purchasing it."

"I think an option should be a compensable interest in land, but that doesn't appear to be the law of the State . . . .

"Motion for summary judgment will be granted."

I

■ Eminent domain is the power of government to take private property for public use. While it is a power inherent in the state as sovereign (*Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 282 [289 P.2d 1]), its exercise is not without restrictions in both the California and United States Constitutions. "Private property may be taken or damaged for public use only when just compensation . . . has first been paid . . . ." (Cal. Const., art. I, § 19.) In its original form this prohibition was included in the sentence enumerating man's other personal rights.[2] Similarly, the Fourteenth Amendment to the United States Constitution mandates that the state shall not take property without due process of law, including the requirement the state make just compensation to the owner of property taken. (*People* ex rel. *Dept. Pub. Wks.* v. *Lynbar, Inc.* (1967) 253 Cal.App.2d 870, 880 [62 Cal.Rptr. 320].)

■ To be constitutionally entitled to compensation, the claimant customarily must show he owned a property interest taken by the state.

of summons in this action, his interest in the property must be deemed solely that of a holder of an unexercised option. (Compare, *State* v. *New Jersey Zinc Co.* (1963) 40 N.J. 560 [193 A.2d 244].)

[2]"No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation." (Cal. Const. of 1849, art. I, § 8; see also *Lynch* v. *Household Finance Corp.* (1972) 405 U.S. 538, 552 [31 L.Ed.2d 424, 434-435, 92 S.Ct. 1113].)

Interests held to constitute property for condemnation compensation purposes include: *fee interests* (*Brick* v. *Cazaux* (1937) 9 Cal.2d 549 [71 P.2d 588]); *leaseholds (S. F. Bay Area Rapid Transit Dist.* v. *McKeegan* (1968) 265 Cal.App.2d 263 [71 Cal.Rptr. 204]); *easements* (*People* ex rel. *Dept. Pub. Wks.* v. *L. A. County Flood etc. Dist.* (1967) 254 Cal.App.2d 470 [62 Cal.Rptr. 287]); *rights-of-way* (*City of Long Beach* v. *Pacific Elec. Ry. Co.* (1955) 44 Cal.2d 599 [283 P.2d 1036]); and, most recently, *building restrictions* (*Southern Cal. Edison Co.* v. *Bourgerie* (1973) 9 Cal.3d 169 [107 Cal.Rptr. 76, 507 P.2d 964]).

■ An option, when supported by consideration, is a contract by which an owner gives another the exclusive right to purchase his property for a stipulated price within a specified time. (*Caras* v. *Parker* (1957) 149 Cal.App.2d 621, 626 [309 P.2d 104].) It is a *right* acquired by contract to accept or reject a present offer within a limited time in the future. (*Brickell* v. *Atlas Assurance Co., Ltd.* (1909) 10 Cal.App. 17, 22 [101 P. 16].)

■ This right to purchase created by an option is a substantial one. It is irrevocable by the optionor (*Adams* v. *Williams Resorts, Inc.* (1962) 210 Cal.App.2d 456, 462 [26 Cal.Rptr. 656]), and may be exercised against his successors following his death (*Bard* v. *Kent* (1942) 19 Cal.2d 449, 452 [122 P.2d 8, 139 A.L.R. 1032]). Further, when recorded, the option creates a cloud on the optionor's title for one year following expiration. (Civ. Code, § 1213.5.) Finally, unless the agreement provides to the contrary, an option is generally assignable (*Mott* v. *Cline* (1927) 200 Cal. 434, 450 [253 P. 718]; see generally, Cal. Real Estate Sales Transactions (Cont.Ed.Bar 1967) § 7.16, p. 263, and cases cited therein); and for tax purposes, the assignment is treated as a sale of the land by the optionee. (See, I.R.C., § 1234(a); and Fed. Tax Reg. § 1.1234-1.)

## II

Historically, courts have taken the position that compensation shall not be granted the holder of an unexercised option to purchase. Thus, in *Taggarts Paper Co.* v. *State of New York* (1919) 187 App.Div. 843, 847-849 [176 N.Y.S. 97], the court held that the holder of a bare option to purchase "had no interest in the land itself and no claim against the State for its condemnation." (*Id.* at p. 848; see also, *Carroll* v. *City of Louisville* (Ky. 1962) 354 S.W.2d 291; *Cravero* v. *Florida State Turnpike Authority* (Fla. 1956) 91 So.2d 312.) Similarly, in *Cornell-Andrews Smelting Co.* v. *Boston & P. R. Corp.* (1911) 209 Mass. 298 [95 N.E. 887], where the

option to purchase was created in conjunction with the optionee's lease of the property, the court concluded the option created no compensable property interest in the lessee-optionee. "[A]lthough the insertion in a lease of an option giving to the lessee at his option a right to buy the fee adds to the value of the lessee's rights under the lease, it is no part of the lessee's estate in the land. It is a contract right and nothing more . . . ." (*Id.* at pp. 306-307.)

California Courts of Appeal have followed this early view denying compensation for an option to purchase. Thus, in *East Bay Mun. Utility Dist.* v. *Kieffer* (1929) 99 Cal.App. 240 [278 P. 476, 279 P. 178], it was stated that the holder of a mere option to purchase land being condemned was not entitled to any part of the award. (See also, *People* v. *Ocean Shore R. R. Co.* (1949) 90 Cal.App.2d 464 [203 P.2d 579].)[3] Similarly, dicta in *Shaeffer* v. *State of California* (1972) 22 Cal.App.3d 1017, 1021-1022 [99 Cal.Rptr. 861], suggests the lessee-optionee should be denied compensation.

Despite this early view throughout the country denying compensation, substantial exceptions allowing compensation have been recognized in recent years. A majority of courts has departed from the rule enunciated in *Cornell-Andrews Smelting Co.,* now awarding damages to the holder of an option to purchase when the option was created in conjunction with a leasehold estate. (See, e.g., *Sholom, Inc.* v. *State Roads Commission* (Md. 1967) 246 Md. 688 [229 A.2d 576]; *Nicholson* v. *Weaver* (9th Cir. 1952) 194 F.2d 804; *23 Tracts of Land* v. *United States* (6th Cir. 1949) 177 F.2d 967; *Cullen & V. Co.* v. *Bender Co.* (1930) 122 Ohio St. 82 [31 Ohio L.R. 308, 170 N.E. 633, 68 A.L.R. 1332]; cf. *City of Ashland* v. *Kittle* (Ky. 1961) 347 S.W.2d 522; *Phillips Petroleum Co.* v. *City of Omaha* (1960) 171 Neb. 457 [106 N.W.2d 727, 85 A.L.R.2d 570].)

Similarly, courts now allow compensation to the holder of an option to renew a lease. (See, e.g., *Canterbury Realty Co.* v. *Ives* (1966) 153 Conn. 377 [216 A.2d 426]; *Land Clearance for Redevelop. Corp.* v. *Doernhoefer* (Mo. 1965) 389 S.W.2d 780; *United States* v. *Certain Land, etc.* (M.D.Ala. 1963) 214 F.Supp. 148; *State* v. *Carlson* (1958) 83 Ariz. 363 [321 P.2d

---

[3]In *Kieffer,* the defendant was the owner of the condemned land and the holder of an unexercised option to purchase land adjacent to it. In addition to the award for the condemned land, defendant sought severance damages for the optioned property. The Court of Appeal concluded he was not entitled, as an optionee, to any part of the condemnation award when the optioned property was taken. (99 Cal.App. at p. 246.) This broad conclusion was followed with little discussion in *People* v. *Ocean Shore R. R. Co., supra,* 90 Cal.App.2d 464, 469.

1025]; *United States* v. *70.39 Acres of Land* (S.D.Cal. 1958) 164 F.Supp. 451.)

In at least one state the holder of a bare option to purchase land has been held entitled to share in the condemnation proceeds. (See *Synes Appeal (In re Petition of Governor Mifflin Joint School Authority)* (1960) 401 Pa. 387 [164 A.2d 221].)

Recent California cases have also demonstrated increased recognition of certain option holder's rights to compensation. Thus, in *State of California* v. *Whitlow* (1966) 243 Cal.App.2d 490 [52 Cal.Rptr. 336], it was held that compensation should be awarded to a lessee for his unexercised option to renew his lease (see also *People* ex rel. *Dept. of Water Resources* v. *Gianni* (1972) 29 Cal.App.3d 151 [105 Cal.Rptr. 248]; *S. F. Bay Area Rapid Transit Dist.* v. *McKeegan, supra,* 265 Cal.App.2d 263, 272); and in *Cinmark Investment Co.* v. *Reichard* (1966) 246 Cal.App.2d 498 [54 Cal.Rptr. 810], it was decided that when a portion of land subject to an unexercised option was condemned, the optionee was entitled to offset the award against the purchase price.

## III

Important changes have occurred in eminent domain law weakening the legal foundation of the Court of Appeal cases denying recovery to the optionee and eroding their authority. The decision in *Kieffer*—consistent with decisions of other jurisdictions at that time—turned on application of the so-called "property interest-contractual right" test which in turn depended on common law concepts of property. (Humphries, *Compensability in Eminent Domain of Lessee's Option to Purchase* (1968) 25 Wash. & Lee L.Rev. 102; Waldman, *Rights of Optionee to Compensation in a Condemnation Proceeding When Option is Exercised After the Taking* (1968) 14 Wayne L.Rev. 660, 666.) Because the *Kieffer* court concluded an option created no traditional property interest in the land—only contractual rights—it held there could be no compensation. (99 Cal.App. at pp. 246-247.)[4]

---

[4]Similarly, the *Ocean Shore* decision depends on application of this property-contract labelling test: " 'The primary question here is the nature and extent of Middleton's interest in the property at the time of the taking by the state. If the agreements here constituted merely an option to purchase, then the exact date of the taking by the state becomes unimportant, as "The holder of an option to purchase land being condemned has no interest in the land which will entitle him to compensation . . . ." [Citations.]' " (90 Cal.App.2d at p. 469.)

■ We do not dispute the technical correctness of the *Kieffer* court's conclusion that—applying traditional common law concepts of property—the option creates in the optionee no estate as such in the land. (Cf. *Leslie* v. *Federal Finance Co., Inc.* (1939) 14 Cal.2d 73, 80 [92 P.2d 906].) However, this test is no longer conclusive.

Recent decisions, both of this and of the federal courts, have held the property-contract labelling process is not necessarily determinative in questions of due process compensation. Instead, compensation issues should be decided on considerations of fairness and public policy. "The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness . . . as it does from technical concepts of property law." (*United States* v. *Fuller* (1973) 409 U.S. 488, 490 [35 L.Ed.2d 16, 20, 93 S.Ct. 801].) "[T]he right to compensation is to be determined by whether the *condemnation has deprived the claimant of a valuable right* rather than by whether his right can technically be called an 'estate' or 'interest' in the land." (*United States* v. *53 ¼ Acres of Land, More or Less, etc.* (2d Cir. 1943) 139 F.2d 244, 247, italics added.)

In 1973, following the lead of the federal courts, this court expressly rejected the much criticized[5] property-contract labelling process, concluding that compensability depends instead on considerations of fairness and public policy. (*Southern California Edison Company* v. *Bourgerie, supra,* 9 Cal.3d 169, 173-175; cf. *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

We must therefore analyze the respective positions of the government, the optionor and the optionee in the condemnation setting to determine if appellant has been deprived of a property right compensable by article I, section 19.

CONDEMNOR

There is no discernible detriment to the condemnor—whatever our holding—because appellant seeks only that portion of the total award exceeding his optioned purchase price. Because this excess otherwise goes to the optionor, no increase in the total condemnation award will result from allocating compensation to the optionee. This decision will

---

[5]See, e.g., Waldman, *supra,* 14 Wayne L.Rev. 660, 666; Stoebuck, *Condemnation of Rights the Condemnee Holds in Lands of Another* (1970) 56 Iowa L.Rev. 293, 306.

affect only the apportionment of the eventual award for the total taking among those incurring loss. Similarly, while in some instances concern may be justified from fear the condemnees may increase the eventual condemnation award by collusive action, the limited scope of the relief sought in this case precludes such concern.

## OPTIONOR

During the life of the option, the optionor can have no reasonable expectation of receiving a purchase price exceeding that specified in the option. His sale of the option—freezing the maximum sale price of the land to the optioned price—has extinguished any such expectation.

## OPTIONEE

The optionee, pursuant to his acquired right, clearly expects to realize any value in excess of the optioned price and often—as here—will expend considerable time and expense in furthering this expectation.[6] To deny the optionee participation in the condemnation award under such circumstances provides the optionor an inequitable and unjustifiable windfall. It strips the optionee of the expected benefit of his bargained right, while relieving the optionor of his bargained duty at a profit. ■ A paramount purpose of eminent domain law is to do substantial justice. (*United States* v. *Miller* (1943) 317 U.S. 369, 375 [87 L.Ed. 336, 343, 63 S.Ct. 276, 147 A.L.R. 55].) Because considerations of fairness with respect to the competing interests of the optionor and optionee fall heavily in favor of compensating the optionee, denying compensation to the optionee would defeat this purpose.

Finally, considerations of public policy dictate the optionee share in the condemnation award. Although the option has long been recognized in the marketplace, increased complexity and severity of land use laws and procedures have substantially enhanced the importance of its use. The option has become a prevalent method for securing to a potential land buyer the ability to ultimately purchase the land—while affording him the opportunity to undertake and complete the often expensive and lengthy process of determining whether his intended use of the land will be permitted. (Cal. Real Estate Sales Transactions (Cont.Ed.Bar 1967) § 7.1, p. 253.) Such efforts by the optionee frequently increase the value of

---

[6]Appellant alleges he has spent in excess of $30,000 seeking governmental approval of construction of a planned unit development on the optioned property.

the optioned property, although legal title remains in the optionor. Given this increased importance of the option in the marketplace, frustration of the process appears unwise.

CONCLUSION

 We conclude that the owner of an unexercised option to purchase land possesses a property right which—if taken by government —is compensable under article I, section 19. The measure of damage to the optionee shall be the excess—if any—of the total award above the optioned purchase price.

To the degree they are contrary to this opinion, the following cases are disapproved: *East Bay Municipal Utility Dist.* v. *Kieffer, supra,* 99 Cal.App. 240; *People* v. *Ocean Shore R.R. Co., supra,* 90 Cal.App.2d 464; *Shaeffer* v. *State of California, supra,* 22 Cal.App.3d 1017.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.