[Civ. No. 16553. Fourth Dist., Div. One. Feb. 21, 1980.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
JOHN M. MILLER, Defendant and Appellant;
CHARLES B. PROVENCE et al., Defendants and Respondents.

**COUNSEL**

James E. Miller and Gideon Kanner for Defendant and Appellant.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Cameron Reeves, Deputy County Counsel, for Plaintiff and Respondent.

Ross C. Provence and Lloyd D. Uber for Defendants and Respondents.

**OPINION**

**STANIFORTH, J.**—Defendant John M. Miller appeals from a judgment entered, after a nonjury trial, denying his claim to status as holder

of an option to purchase real property, to share in proceeds flowing from a pretrial settlement of the condemnation action brought by the County of San Diego against the landowners, Charles and Winifred Provence.

## FACTS

The Provences were the owners of 22 acres of land in Chula Vista, California. On December 30, 1971, Miller obtained a written option to purchase the 22 acres from the Provences for a purchase price of $225,000 or in the alternative $200,000 plus a credit of $35,000 towards a condominium to be built on the property. The option recited it was given "for valuable consideration" and expired April 24, 1972, with sellers agreeing to a reasonable extension under certain conditions. The agreement made no provision for the possibility of condemnation. Miller was to obtain "necessary zone changes" for a planned residential community. Miller submitted an application to the City of Chula Vista for a conditional use permit to build a 93-unit project in the flood plain zone.

On July 5, 1972, Miller was notified his request for rezoning was denied by the Chula Vista Planning Department because of the proposed increased population density and the county's direction to the public works agency, with the approval of the San Diego County Board of Supervisors and the City of Chula Vista, to acquire the land for a regional park. Miller appealed; the matter was continued several months pending a county study. On December 6, 1972, the Provences notified Miller in writing unless the rezoning application was granted at a hearing scheduled December 19, 1972, the option "shall be terminated... December 30, 1972."

On February 16, 1973, the county filed a condemnation action to acquire the 22 acres; summons was issued that day. The county served the Provences February 23, 1973. That same day the Provences notified Miller the option was terminated. Miller attempted to exercise the option February 26, 1973, and tendered escrow papers for a purchase price of $225,000 but did not include any alternative offer to buy for the $200,000 plus credit on the condominium.

Miller requested service as a defendant in the condemnation action, and he filed an answer. He attempted by writ process to prevent the county from acquiring the land; however, his petitions were denied by

this court and the California Supreme Court. After a hearing, Miller's answer was stricken and summary judgment granted the county. Miller's motion to file an amended answer and a cross-complaint was denied. Pending these proceedings the county bought the land from the Provences for $244,000.

The trial court granted the summary judgment based upon the finding—as a matter of law—Miller had no interest in the 22 acres or the condemnation proceeds. This conclusion was based upon this long-established rule of law: "The holder of an unexercised option to purchase real property has no right to share in the award when that property has been condemned. *People* v. *Ocean Shore R.R.* (1949) 90 CA.2d 464, 469, 203 P.2d 579, 582; *East Bay Munic. Util. Dist.* v. *Kieffer* (1929) 99 CA 240, 246, 278 P 476, 479." (Condemnation Practice in Cal. (Cont.Ed.Bar. 1973) p. 266.)

The validity of Miller's claim—as a factual matter—was not litigated in the trial court. The summary judgment was granted on a bald principle of law which *assumed* for the purposes of its ruling that there was a viable option contract. Miller appealed the grant of summary judgment to this court. The judgment was affirmed in an unpublished opinion (*County of San Diego* v. *Miller*, 4 Civ. No. 12849) whereupon the Supreme Court granted a hearing and in its opinion (*County of San Diego* v. *Miller*, 13 Cal.3d 684 [119 Cal.Rptr. 491, 532 P.2d 139]) reversed the grant of summary judgment, expressly disapproved of prior California case law to the contrary, holding "the owner of an unexercised option to purchase land possesses a property right which—if taken by government—is compensable under article I, section 19. The measure of damage to the optionee shall be the excess—if any—of the total award above the optioned purchase price." (*Id.*, at p. 693.)

The Supreme Court's reversal of the grant of summary judgment was based in toto upon issues of law—not fact. The court described the position of the case in the trial court in this fashion: "Respondent's [County of San Diego's] motion for summary judgment was granted on the ground appellant [Miller] had no compensable interest in the property. In reaching this decision Judge Froehlich thoughtfully declared: '[I] am having a little trouble here because we all know that people who obtain options on property think they have an interest in the property. As a matter of fact, sometimes the acquisition of an option to acquire real property can be an alternative way of purchasing it.'

"'I think an option should be a compensable interest in land, but that doesn't appear to be the law of the State . . . . Motion for summary judgment will be granted.'" (*County of San Diego* v. *Miller, supra,* 13 Cal.3d 684, 687.)

The Supreme Court made no factual determination, resolved no factual issues. For example, the Supreme Court stated: "Appellant [Miller] *alleges* he has spent in excess of $30,000 seeking governmental approval . . . ." (*Id.,* at p. 692, fn. 6, italics added.) In so doing, the Supreme Court followed "an unbroken line of decision in this state since the date of the original enactment of [Code Civ. Proc.] section 437c, the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns." (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

Pursuant to the Supreme Court's unqualified reversal, the matter was set for trial in the Superior Court of San Diego County.

The Provences then filed an answer denying the existence of an option in Miller when the eminent domain action was filed. They alleged a sale pendente lite of the 22 acres to the county by contract that included an agreement to indemnify the county from any claim of Miller arising out of his claim of an option. Miller then sought a change of venue to a neutral county—Miller was a resident of Orange County. The law and motion court, after denying—striking the affidavit as sham—Miller's Code of Civil Procedure section 170, subdivision 5, motion to disqualify the judge (Levitt), *granted* Miller's motion for change of venue and transferred the matter to Imperial County for trial and for determination of other motions by Miller then on file.

On motion by the county, the Imperial County Superior Court ordered the trial bifurcated with the issue of the validity of Miller's claim to option on the 22 acres to be tried first. The court denied Miller's demand for a jury trial on the bifurcated portion of the proceeding in which Miller's asserted optionee interest was to be litigated.

After pretrial conferences, the parties stipulated to the issues to be tried and as to certain facts "deemed proved." The trial consumed 15 court days and resulted in the trial court's finding that Miller's rights as optionee, if any, "terminated on December 30, 1972"; that Miller has no interest in the 22 acres "by way of option or otherwise" when the county filed its eminent domain action and summons issued February

16, 1973. The court further found neither the county nor the Provences were estopped "to deny the revocability of the option." Based upon lengthy detailed factual findings in support of these conclusions, the court gave judgment against Miller in favor of the county. From this judgment Miller appeals.

DISCUSSION

Miller informs this court "this case is being presented to the court on two sets of issues: *First*, dispositive threshold issues which, if correctly resolved below, would have prevented this case from ever going to the erroneous 'trial' purporting to deal with the Provence-raised issues. These include such matters as the disregard of the law-of-the case aspect of the Supreme Court's holding on the first appeal, the setting of the neither-fish-nor-fowl 'trial' which, depending on what suited the County, was treated *simultaneously* as a condemnation and a non-condemnation matter, denial of jury trial as well as the fact that the case at bench was moved to Imperial County by a trial judge acting wholly without jurisdiction. [¶] *Second*, substantive issues which were erroneously decided below." This overview is not a guide to what appears in the following 50 pages of Miller's opening brief and 18 pages of his reply brief. Nevertheless we glean these contentions of trial court error.

I

■ Miller contends that the Supreme Court decision in *County of San Diego* v. *Miller, supra*, 13 Cal.3d 684, factually, legally established his status as an optionee, his entitlement to compensation as "law of this case." This contention is without merit.

The Supreme Court in *County of San Diego* v. *Miller* made an unqualified reversal of the trial court's granting of summary judgment on a matter of law. The issue of whether *factually* Miller had a valid optionee's compensable interest was not litigated in this trial court; nor was any such factual determination made by the Supreme Court. The unqualified reversal put the parties back to the status quo ante and required setting the case for trial. (*McDonough Power Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, 532 [105 Cal.Rptr. 330, 503 P.2d 1338].) ■ When a judgment is unqualifiedly reversed, the effect is the same as if it had never been entered except that on retrial the opinion of the reviewing court "must be followed as far as applicable."

(*Weisenburg* v. *Cragholm* (1971) 5 Cal.3d 892, 896 [97 Cal.Rptr. 862, 489 P.2d 1126.])

■ The decision of the Supreme Court was not "applicable" by any stretch of imagination to factual issues not yet adjudicated when a pre-trial motion for summary judgment was granted on a pure question of law. The law of the case doctrine has no applicability here.

## II

Miller contends trial court error in overruling his *demurrer* to Provences' answer. ■ Miller argues Provence sold his interest in the 22 acres to the county *before* trial; therefore he has no interest in the property or the legal proceedings. Miller's reasoning is faulty. Albeit Provence conveyed away his interest in the realty, he has a most substantial interest in the disposition of the condemnation proceeds. The Provences are entitled to "just compensation" (Cal. Const., art. I, § 19) from the county. Just compensation is full, not partial payment. Nor is just compensation to be reduced by an amount claimed as the value of an asserted option, the validity of which is disputed by the owner's answer.

The Provences' answer alleged Miller's option had been terminated before the filing of the county's eminent domain action and before any exercise of the option by Miller. Further, the Provences plead their contracted duty to indemnify the county should Miller prevail and recover for his asserted interest. These issues tendered by the Provences' answer make them real parties in interest in the condemnation proceedings.

Miller's presence in the condemnation proceedings rests upon his voluntary intrusion. He was not named as a party by the county because his claim of option was not of record. The Provences, however, were named parties, necessary parties since they were owners of record. Further, the Provences had a statutory duty to defend Miller's claim on its merit. (Civ. Code, § 2778, subd. 4.)

Miller argues that the condemnation action is "no place for adjudication of collateral matters among condemnees." "A separate action" should have been pursued by Provences. This argument flies in the face of express statutory authority for such cross-actions among condemnees. "All persons...having or claiming an interest in...the damages for the taking...though not named, may appear...and defend...." (Code

Civ. Proc., § 1246 [now § 1250.230].) Additionally, Code of Civil Procedure section 1246.1 (now § 1260.220) applies specifically to "divided interests in property" and authorizes "in the same proceeding" the determination of the respective rights of the defendants.

In *Redevelopment Agency v. Penzner* (1970) 8 Cal.App.3d 417 [87 Cal.Rptr. 183], the appeal court construed Code of Civil Procedure section 1246 (now § 1250.230) in conjunction with Code of Civil Procedure section 1246.1 (now § 1260.220) as "streamlining procedures," making it possible for defendants with conflicting interests in condemned property to litigate their adverse claims in the condemnation award without the necessity of filing a cross-complaint. (*Id.*, at p. 423.)

Based upon the foregoing statute, case authority and the respective pleadings of Miller and the Provences, we conclude both Miller and the Provences were the proper parties. The condemnation proceedings were the proper vehicle for litigating their conflicting claims in the condemnation proceeds. No separate action was required.

Miller makes a further convoluted assault on the Provences' status as defendants in this proceeding. He points to the Provences' County of San Diego sales agreement where the Provences agreed to dismiss the pending, condemnation proceeding. Miller overlooks the Provences' undertaking to indemnify the county if Miller prevailed in his contention. Miller sought by his demurrer to preclude the Provences from challenging the validity of his claim of optionee to monies otherwise payable totally to the Provences. We find no trial court error in overruling Miller's demurrer and proceeding to trial on the bifurcated issue.

## III

■ Miller next contends the trial court erroneously denied him the right to a jury trial on the bifurcated issue his claim of optionee's interest in the property taken.

Miller voluntarily entered into a condemnation proceeding. He sought to be awarded a portion of the award based on his claim of option right. His entry, his claim, in no way changed the nature of the lawsuit into which he interjected himself. The condemnation suit was and remained a special proceeding. (*Vallejo etc. R.R. Co. v. Reed Orchard Co.* (1915) 169 Cal. 545, 566 [147 P. 238].)

In a condemnation, "[w]hen the proceeding comes on for hearing all issues except the sole issue relating to compensation, are to be tried by the court...." (*People* v. *Ricciardi* (1943) 23 Cal.2d 390, 402 [144 P.2d 799].) Code of Civil Procedure section 1247 directed the *court* in eminent domain proceedings "[t]o hear and determine all adverse or conflicting claims to the property sought to be condemned...." This section was construed as an "express legislative recognition of the entire competency of the court to try and determine adverse claims to the property in a proceeding to condemn." (*City of Los Angeles* v. *Pomeroy* (1899) 124 Cal. 597, 609, 610 [57 P. 585]; *City of Long Beach* v. *Aistrup* (1958) 164 Cal.App.2d 41 [330 P.2d 282]; *City of Los Angeles* v. *Darms* (1928) 92 Cal.App. 501 [268 P. 487]; *People* v. *Buellton Development Co.* (1943) 58 Cal.App.2d 178, 186 [136 P.2d 793].)

Section 1247 was repealed in 1976 (Stats. 1975, ch. 1275, § 1, p. 3409) and section 2 thereof was supplanted by Code of Civil Procedure section 1230.040. This section authorizes general rules of practice to be applicable in eminent domain proceedings. This legislative action made no change in the duty of the court where there are multiple claims of right, title or interest in the condemned property or its proceeds. (See Legis. Committee com., West's Ann. Code Civ. Proc., §§ 1132-1250 (cum. pocket pt.) p. 50.)

The trial court, in this bifurcated proceeding, was required to hear and determine Miller's claim of a right, title or interest in the condemned property, by virtue of his asserted option. Such a proceeding is clearly an equitable proceeding in the nature of quiet title for which Miller had no right to jury trial either before or after the repeal of Code of Civil Procedure section 1247. (See *Santa Ana M. & I. Co.* v. *Kinslow* (1939) 30 Cal.App.2d 107 [85 P.2d 899]; *Hill* v. *Younkin* (1969) 274 Cal.App.2d 880 [79 Cal.Rptr. 509]; *Thomson* v. *Thomson* (1936) 7 Cal.2d 671 [62 P.2d 358, 117 A.L.R. 1].)

Miller concedes—in fact urges—the propriety of the Provences' filing a cross-complaint "seeking to quiet title" against Miller's claim. Miller's characterization of his quarrel with the Provences as "contractual" does not change the substance of his claim. He seeks an adjudication of a right, title or interest in the 22 acres and the condemnation award therefor. He was not entitled to a jury trial on this issue. His citations to cases holding the issue of "compensation" shall be determined by a jury are not in point.

## IV

Miller next contends the trial court erred when it denied a jury trial on the question of the "reasonableness of the respondent's precondemnation conduct." Miller is arguing—we intuit—the county's delay, disapproval of Miller's plans for improving the 22 acres "constituted an unreasonable delay" within the meaning of *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 50, 52 [104 Cal.Rptr. 1, 500 P.2d 1345].

The issue of a claim to "Klopping" damages was not pleaded in Miller's answer. He sought to argue the matter in his *trial brief* but in fact no allegations were made or tendered by amendment to raise by pleading the issue of "Klopping" style damages.[1] Moreover, such issue was not urged by Miller in his pretrial statement. The issues actually tendered for trial set forth in the pretrial order do not include any reference to such an issue. The pretrial conference order superseded the issues raised by the pleadings and directs the remaining course of the litigation unless modified at or before trial. (Cal. Rules of Court, rule 216; *Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1122 [90 Cal.Rptr. 283]; *Feykert* v. *Hardy* (1963) 213 Cal.App.2d 67, 74 [28 Cal.Rptr. 510].)

If we ignore this host of procedure barriers to Miller's argument and attempt to find some substance behind Miller's argument, we again find naught. No facts appear in this record that even hint at a "Klopping" damage claim against either the county or the Provences. This is a meritless assertion without redeeming factual or legal foundation.

## V

Miller challenges the trial court finding that the county was not estopped to deny the existence of the option after the date of taking. This was a contested issue on trial. Miller was given the full opportunity to produce any and all relevant evidence on this issue. The trial court concluded neither the county nor Provence was estopped to deny the existence of the option on the date of taking.

Miller's contention ignores the substantial evidence supporting the trial court's finding of no basis for estoppel, e.g., Miller failed to exer-

---

[1] In *Klopping, supra*, 8 Cal.3d 39, 51-52, the Supreme Court's words are "when the condemner acts unreasonably in issuing precondemnation statements, either by excessively delaying eminent domain action or by other oppressive conduct, our constitutional concern over property rights requires that the owner be compensated."

cise the option within the time granted; Miller refused to resubmit his plans with a lower population density although advised to do so by officials of the City of Chula Vista.

## VI

■ When Judge Levitt struck Miller's affidavit as sham, and denied his Code of Civil Procedure section 170, subdivision 5, motion, Miller sought no relief by way of writ but rather accepted the challenged judge's favorable determination of his motion to change venue. Without murmur on this score, he has proceeded to trial and now for the first time on appeal complains.

The case of *Agnew* v. *Contractors Safety Assn.* (1963) 216 Cal. App.2d 154 [30 Cal.Rptr. 690], disposes of this contention. In *Agnew* the trial court struck the Code of Civil Procedure section 170, subdivision 5, declaration on its own motion and the plaintiff went to trial, without objection to the judge. When judgment went against Agnew, he complained on appeal. The appeal court said at page 159: "[T]here is a principle to the effect that a party should not be allowed to gamble on a favorable decision and thereafter raise an objection that the trial judge was biased and prejudiced in the event the litigant is disappointed in the result. [Citation.] Such an attempt to play fast and loose with the administration of justice will not be tolerated." We agree.

This case was fairly, most judiciously tried. Miller was given every opportunity to present evidence and law relevant to his contentions. The evidence is substantial, convincing, in support of the trial court's conclusions that Miller had no right, title or interest in the condemnation property or the proceeds.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied March 5, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1980.