[No. F009935. Fifth Dist. Mar. 30, 1989.]

CITY OF TURLOCK, Plaintiff, Cross-defendant and Respondent, v. PAUL M. ZAGARIS, INC., Defendant, Cross-complainant and Appellant.

**COUNSEL**

Donald J. Horvath and Thomas A. Lacy for Defendant, Cross-complainant and Appellant.

Carl O. Waggoner, City Attorney, for Plaintiff, Cross-defendant and Respondent.

OPINION

FRANSON, P. J.—

### STATEMENT OF THE CASE AND FACTS

Appellant Paul M. Zagaris, Inc., appeals from the trial court's ruling that it take nothing in respondent City of Turlock's eminent domain action or on its cross-complaint for money damages. Appellant contends the trial court erroneously ruled it was not entitled to a broker's commission in this action.

In early 1986, representatives of appellant, a real estate broker, approached Irving and Roylene Garcia regarding the sale of their property, a 19.91-acre parcel adjacent to the Turlock city limits, to Joaquin Construction Company (Joaquin). An agreement dated March 14, 1986, was entered into between the Garcias and Joaquin for the sale of this property, and an escrow was opened.

This sales agreement provided that escrow would open within 30 days and close within 180 days of the signing of the agreement. Further, the close of escrow was contingent upon the following conditions being met: "a. The property above-described being annexed to the City of Turlock.

"b. Buyer obtaining all necessary governmental approvals to permit the property to be subdivided.

"c. Buyer's approval of on-site improvement costs by Mid-Valley Engineering. . . ."

With respect to appellant, the agreement provided: "12. . . . Seller acknowledges that a six percent (6%) commission is payable to PAUL M. ZAGARIS, INC. REALTOR. Such six percent (6%) commission shall be payable on a pro rata basis as Seller receives the purchase price. The unpaid portion of the commission shall be evidenced by a promissory note. As Buyer makes payments to Seller, Buyer agrees to write two (2) checks with each payment, one for ninety-four percent (94%) of the amount paid to Seller and one for six percent (6%) of the amount paid to broker and Seller. . . ." Appellant was not a party to this agreement and did not enter into a separate written agreement with the Garcias regarding a commission.

Shortly after the escrow was opened, respondent advised the Garcias that it was interested in acquiring the property and began negotiations with them. Due to the actions of respondent, Joaquin did not apply for annexation or for rezoning of the property.

On December 3, 1986, respondent filed a complaint in eminent domain against the Garcias, Joaquin and appellant. Thereafter, respondent and the Garcias signed a written agreement providing that the Garcias would stipulate to the entry of judgment against them and that respondent would hold the Garcias harmless against any claims of Joaquin or appellant.

On December 10, 1986, respondent paid the Garcias $696,850, which was the gross amount of the sales price agreed to between the Garcias and Joaquin in their March 14, 1986, agreement. At about the same time, respondent settled with Joaquin for $10,000.

On December 23, 1986, appellant filed a cross-complaint seeking to recover against the Garcias for the commission payable under the contract and against respondent for condemning alleged vested contractual rights. As noted above, the trial court found against appellant on both the complaint in eminent domain and the cross-complaint.

## DISCUSSION

■ The issue before us is whether a real estate broker is entitled to a commission from a seller where the only agreement regarding the broker's commission is contained in the sale agreement and the sale is not concluded under that agreement due to eminent domain proceedings. We answer the question in the negative.

■ "Eminent domain is the power of government to take private property for public use." (*County of San Diego* v. *Miller* (1975) 13 Cal.3d 684, 687 [119 Cal.Rptr. 491, 532 P.2d 139].) However, "[p]rivate property may be taken or damaged for public use only when just compensation . . . has first been paid . . . ." (Cal. Const., art. I, § 19.) ■ Courts have not limited such recovery to owners of a fee simple interest. (*McMahan's of Santa Monica* v. *City of Santa Monica* (1983) 146 Cal.App.3d 683, 690 [194 Cal.Rptr. 582].) To be constitutionally entitled to compensation, the claimant must only show that he owned a property interest which has been taken by the state. (*Ibid.*)

Appellant relies on *County of San Diego* v. *Miller, supra,* 13 Cal.3d 684, to support its position. There, the court held that the owner of an unexercised option to purchase land possesses a valuable property right which, if

taken by the government, is compensable under California Constitution article I, section 19. ■■■ Appellant contends that the condemnation action here similarly deprived it of a valuable right, the right to receive a commission pursuant to the Garcia-Joaquin contract.

The *County of San Diego* v. *Miller, supra,* 13 Cal.3d 684, court noted that the exclusive right conferred by the option, i.e., the right to purchase the optionor's property for a stipulated price within a specified time, is a substantial one. It is irrevocable by the optionor, may be exercised against the optionor's successors following his death, and, when recorded, creates a cloud on the optionor's title for one year following expiration. Further, unless the agreement provides otherwise, an option is generally assignable, and for tax purposes, the assignment is treated as a sale of the land by the optionee. (*Id.* at p. 688.) Although under traditional common law property concepts, the option creates in the optionee no estate as such in the land, the court held that, based on the expectation of the optionee that he will realize any value in excess of the optioned price and the increased importance of the option in the marketplace, considerations of fairness and public policy required that the optionee be compensated. (*Id.* at pp. 691-693.)

However, California law does not protect a broker's right to a commission to the same extent as it protects an optionee's right to purchase the optionor's property. ■■■ " 'Where the only agreement to pay a broker a commission is contained in the contract between his principal and the customer, the broker's right to compensation is dependent upon performance of that contract.' " (*Chapman* v. *Gilmore* (1963) 221 Cal.App.2d 506, 508 [34 Cal.Rptr. 515].) If the sale is not consummated, the commission does not become due. (*Paulsen* v. *Leadbetter* (1968) 267 Cal.App.2d 148, 154 [72 Cal.Rptr. 819].) If the broker has seen fit to allow payment of his compensation to be dependent upon the performance of a contract made between parties other than himself, he cannot complain if, through the nonperformance of that contract, his own contingent rights are lost. (*Chapman* v. *Gilmore, supra,* 221 Cal.App.2d at p. 508.)

This rule restricting a broker's right to recover a commission has also been applied where the sale has not been consummated due to eminent domain proceedings. In *Snell* v. *Wickersham* (1956) 140 Cal.App.2d 812 [295 P.2d 918], the court upheld the trial court's finding that the broker was not entitled to a commission where the contract provided that the commission was payable out of funds received from the sale and the sale was abandoned under pressure of a condemnation proceeding before any payments were made. The court found that the parties were bound by their contract and that the seller, through no fault of her own, could not convey

title as provided in the escrow instructions by reason of the condemnation action. (*Id.* at pp. 815-816.)

Similarly, here, the sale agreement provided that the commission was payable as the seller received the purchase price. Appellant's commission was therefore contingent upon the escrow closing. Since escrow did not close due to the eminent domain proceeding, appellant's contingent rights were lost.

Although the above cited cases regarding broker's commissions were decided before *County of San Diego* v. *Miller, supra,* 13 Cal.3d 684, the considerations of fairness and public policy set forth by the *Miller* court for protecting an option holder do not apply to the broker in this situation.

An option is a unilateral contract under which the optionee, for consideration, receives the right and the power to create a contract of purchase during the life of the option. (*Claremont Terrace Homeowners' Assn.* v. *United States* (1983) 146 Cal.App.3d 398, 406 [194 Cal.Rptr. 216].) However, under this sale agreement, appellant had no power to affect the transaction in any way. Appellant was not a party to the contract and was dependent upon the buyer and seller to complete the transaction before being entitled to a commission. Thus, the unfairness found by the *Miller* court in depriving the optionee of the expected benefit of his bargained right, i.e., the right to realize any value in excess of the optioned price through the unilateral act of exercising the option, is not present here. The contingencies contained in the sale agreement over which appellant had no control deprived it of the certainty enjoyed by an option holder. Therefore, appellant's expectations should have been correspondingly reduced. Further, as noted by the court in *Preston* v. *Carnation Co.* (1961) 196 Cal.App.2d 43 [16 Cal.Rptr. 240], as a matter of practice a real estate broker can protect himself by covering the possibility of condemnation proceedings in a commission contract with the seller. (*Id.* at p. 48.)

Similarly, unlike the situation in *Miller,* public policy does not dictate that appellant share in the condemnation award. In *Miller,* after noting that the increased complexity and severity of land use laws and procedures have substantially enhanced the importance of options in the marketplace, the court held it would be unwise to frustrate this option process by denying compensation to the optionee. (*County of San Diego* v. *Miller, supra,* 13 Cal.3d at pp. 692-693.) However, there is no indication that changes in the law have caused a corresponding enhancement of the importance of brokers in the marketplace since *Snell* v. *Wickersham, supra,* 140 Cal.App.2d 812, *Chapman* v. *Gilmore, supra,* 221 Cal.App.2d 506 and *Paulsen* v. *Leadbetter, supra,* 267 Cal.App.2d. 148 were decided. Thus, the rule stated in those

cases which would deny compensation to appellant should continue to be followed here.

The judgment is affirmed.

Stone (W. A.), J., and Ardaiz, J., concurred.