231 F.Supp.2d 954 (2002)
Sebastian RUCCI, Plaintiff,
v.
THE CITY OF EUREKA, Defendant.
No. 4:01-CV-1068 CAS.
United States District Court, E.D. Missouri, Eastern Division.
November 6, 2002.
*955 Sebastian Rucci, Poland, OH, for Plaintiff.
Katherine L. Butler, Butler and Associates, P.C., Eureka, MO, for Defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on defendant's motion for summary judgment. Plaintiff Sebastian Rucci filed this action pro se against the City of Eureka (the City) under 42 U.S.C. § 1983. Rucci claims that the City's failure to rezone two parcels of land, which he had an option to purchase, for residential development violated his rights under the Takings Clause of the Fifth Amendment as incorporated into the Fourteenth Amendment. For the reasons set forth below, the Court will deny the motion.
The parties have been before this Court previously in an action involving the City's failure to rezone the land as requested by Rucci in Rucci v. City of Eureka, No. 4:96-CV-2425 (E.D.Mo.) (Rucci I). In that case, the Court granted the City summary judgment on Rucci's claims that the City's conduct violated his equal protection and due process rights. The Court dismissed without prejudice Rucci's claim under the Takings Clause as unripe because he had not yet sought just compensation in state court. (Order dated Oct. 20, 1997).
Rucci then filed an action in state court for inverse condemnation. On January 7, 2000, following a three-day bench trial, the Circuit Court of St. Louis County issued an amended judgment in favor of the City. The Court noted that Rucci "properly reserved his right to litigate his Fifth Amendment takings claim in Federal Court by only submitting his state claim for inverse condemnation under Article 1, § 26 of the Missouri Constitution." Rucci v. City of Eureka, No. 98CC-004139. On June 26, 2001, the Missouri Court of Appeals summarily affirmed the state trial court's judgment. Rucci v. City of Eureka, 45 S.W.3d 483 (Mo.Ct.App.2001) (per curiam).
For a detailed factual background of the dispute between the parties see the Order and Memorandum dated August 27, 1998, in Rucci I. Briefly, on May 22, 1995, Rucci entered into a real estate contract for the purchase of two adjacent parcels of land, totaling approximately 65 acres in the City, for a purchase price of $650,000.[1] *956 The majority of the property was zoned "FP Flood Plain District" under the City's zoning code. Pantheon's obligation to close under the contract was contingent upon its obtaining, within 120 days of the date of the contract, rezoning of the property to allow for the building thereon of a housing development, or upon Pantheon waiving this contingency. On March 1, 1997, the contract was amended to set the date for satisfaction or waiver of the rezoning contingency as July 30, 1997.
In July 1996, Rucci applied to the City for a permit to remove the property from the flood plain by grading the property and relocating a creek that crossed it. According to Rucci, this application was never reviewed. In November 1996, Rucci presented to the City's Planning Commission, an application for rezoning and approval of housing developments with 83 lots on the property. Following public hearings, the application was denied by the Zoning Commission and, on appeal, by the City's Board of Aldermen on May 6, 1997, and Board of Adjustment in December 1997. Rucci then filed Rucci I.
In the present case, Rucci claims that by refusing to permit him to remove the property from the flood plain and denying his development proposal, the City has precluded all economically viable use of the land in favor of the City's desire to keep the land in its natural state. He asserts that the City's Flood Plain Ordinances recognize a developer's right to grade property and relocate a creek.
For summary judgment, the City argues that because Rucci had notice of the zoning restriction on the property before he contracted for its purchase, he had no "investment-backed expectation" in building a housing development on the property, as required for a takings claim. The City also argues that Rucci failed to take several necessary steps to qualify his development plan for consideration, including obtaining approval from the Federal Emergency Management Agency and the Army Corps of Engineers to modify the flood plain on the property. The City further argues that the property as zoned has a variety of economically viable uses, such as golf courses and farming enterprises, and that Rucci has no right to have the property zoned for a more valuable, or its most valuable, commercial use.
In opposition to the motion for summary judgment, Rucci argues that the recent Supreme Court decision of Palazzolo v. Rhode Island, 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), defeats the City's notice argument. He argues that his right to purchase the property entitles him to damages if that property is "taken" by the City. He argues that a jury could find that a taking has occurred because the City's actions denied all economically viable use of the land. In his amended memorandum in opposition to the City's motion for summary judgment, Rucci asserts that he seeks as damages the difference between his option purchase price of $650,000 and what he could have resold the land for ($900,000) had the City approved his grading and development plans.
In ruling on the motion for summary judgement a court must evaluate the record "in the light most favorable to the nonmoving party to determine whether there is no genuine issue of material fact to prevent the moving party from being entitled to judgment as a matter of law." Missouri ex rel. Garstang v. United States Dep't of Interior, 297 F.3d 745, 748 (8th Cir.2002); Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, *957 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
The Takings Clause[2] originally was applied only to physical appropriations of property, but in 1922 the Supreme Court recognized that regulations on property will also be considered takings if they go "too far." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922); see also Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 277 (8th Cir.1993). In Palazzolo v. Rhode Island, 533 U.S. at 617-18, 121 S.Ct. 2448, the Supreme Court reaffirmed this principle, explaining as follows:
Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action. These inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. (cited and quoted cases omitted).
The Court held in Palazzolo that case that acquisition of title to land after the effective date of state restrictions on the use of the land is not fatal to a regulatory takings claim by the new owner. Id. at 627-28, 121 S.Ct. 2448. The Court reasoned that a contrary rule "would absolve the State of its obligation to defend any action restricting land use no matter how extreme or unreasonable" whenever ownership of land changed hands. Id. at 627, 121 S.Ct. 2448.
As noted above, Rucci argues that this holding forecloses the City's position that his takings claim fails because he knew of the zoning restrictions when he contracted to purchase the property. The Supreme Court, however, talks in terms of acquiring title to land after the use restriction. Here Rucci never acquired title. Rather, he contracted for the purchase of the land. Rucci relies on a California Supreme Court case, County of San Diego v. Miller, 13 Cal.3d 684, 119 Cal.Rptr. 491, 532 P.2d 139 (1975), which held that the owner of an unexercised option to purchase land possesses a property right which entitles him to share in condemnation proceeds, under the California constitution.
State law defines property rights for federal takings claims. Daniels v. The Area Plan Comm'n of Allen County, 306 F.3d 445, 459 (7th Cir.2002). In City of Peerless v. Dennis, 42 S.W.3d 814, 818 (Mo.Ct.App.2001), the Missouri Court of Appeals held, in a case of first impression, that the option to purchase property contained in a lease agreement is a valuable right of the lessee, which, if taken by eminent domain, is compensable under Missouri law. The Court in the present case concludes that Rucci had a property interest that was protected under the Takings Clause on the date of the alleged regulatory taking. The Court further concludes that there remain genuine issues of material fact that preclude the granting of summary judgment in this case. A jury could find that the City's conduct denied all economically viable use of the land in question, and that Rucci, as holder of an option to buy the property, was entitled to damages.
Accordingly,
*958 IT IS HEREBY ORDERED that defendant's motion for summary judgment is DENIED. [Doc. 14]
IT IS FURTHER ORDERED that trial in this case is set for Monday, November 18, 2002, at 1:30 p.m. in Courtroom 12N.
NOTES
[1] The contract, which is attached to Rucci's amended memorandum in opposition to the City's motion for summary judgment (Doc. 31), is between the seller and Pantheon Development Co., Inc. The City does not dispute that Rucci was the sole owner of Pantheon and that Pantheon's contract rights were assigned to him.
[2] The Takings Clause of the Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation."