[Civ. No. 25458.   Second Dist., Div. One.   Oct. 3, 1961.]

JACK PRESTON, Appellant, v. CARNATION COMPANY (a Corporation), Respondent.

Thomas W. Hughes for Appellant.

William H. Birnie for Respondent.

FOURT, J.—This is an appeal from a judgment in favor of the defendant upon a claim of plaintiff for a real estate broker's commission.

Plaintiff, a real estate broker, brought an action against the defendant to collect a broker's commission of five per cent of and upon the sales price of a certain parcel of real property sold by the defendant to the city of Burbank. The plaintiff claims to have been the procuring cause of the sale of the property to the purchaser.

A résumé of some of the facts in the case is as follows: In 1956 the plaintiff, upon an oral contract of employment, sold some property of the defendant's and was paid a broker's commission for such service. Thereafter, the defendant told the plaintiff that it wished to sell off certain of its property in the city of Burbank for the sum of $400,000.

The plaintiff, a resident of the city of Burbank, told defendant of his knowledge to the effect that the city of Burbank had indicated an intention of building a new municipal power plant and work yard and that the city might be interested in the purchase of the land in question. The defendant, on May 18, 1956, gave to plaintiff a letter of authority to present the property to the city for a sale. The plaintiff thereafter directed a letter to the city outlining the proposed terms of purchase of the property in question as of that time. Various surveys were had and made by the city and the property in question was included within some of the surveys. To finance the power plant and work yard the city intended to issue and sell bonds which needed the approval of the voters.

The defendant gave to the plaintiff an exclusive listing (to expire November 30, 1956) of certain property which in total area was smaller than the parcel which was originally to be sold. No sale of the property so described was made.

On November 6, 1956, a bond election was held in the city of Burbank and the voters rejected the proposal to issue and sell the bonds for the purposes heretofore mentioned.

On December 6, 1956, the defendant directed a letter to plaintiff giving him a new exclusive listing of certain parcels of the property. This listing was effective to December 31, 1956. The area of the parcels and the price thereof were different from those of the property heretofore listed with

the plaintiff. Plaintiff was told in the letter " [T]his exclusive will run through December 31, 1956 and if not sold by that time, we will place the property on an open listing basis but we would be glad to protect you or anyone else who has an active prospect." Plaintiff claims that he reopened negotiations with the city. No sale was completed in 1956. Plaintiff requested a new exclusive listing of defendant's property and was refused.

On January 30, 1957, the city enacted an ordinance calling for a bond election to be held on February 26, 1957. The bond issue was approved by the voters at the election. On April 16, 1957, the city council noticed a meeting to consider the matter of the location and construction of the plant which was contemplated in the bond issue election. The attorney for the defendant was present at the council meeting. Plaintiff was told in effect by the attorney for the defendant that he, the plaintiff, would have nothing to do with the matter so far as defendant was concerned.

On August 1, 1957, a condemnation action was filed by the city of Burbank and a copy of the summons and complaint were served upon the defendant. The city in said action sought to condemn a part of defendant's property. On September 25, 1957, the condemnation case was settled when the defendant and the city entered into a "Sales Agreement." The description of the real property and the terms and conditions of the purchase and sale thereof mentioned in the "Sales Agreement" were different from those contained in the proposal made in the letters to the plaintiff in 1956.

The city manager of the city of Burbank testified with reference to a conversation he had with the plaintiff on or about February 19, 1957, and said, ". . . because we were at that time not at all interested in purchasing the property because the bonds hadn't been issued. We weren't sure whether or rather where we were going to put the public works yard so that I could not truthfully say that we were discussing the sale of the property. . . . I couldn't be interested in buying the property at that time because it was not determined whether or not we needed any more property; whether the bonds would pass or not; whether this would be the property that we would ultimately purchase, because there were a number of sites that were being considered."

The general manager of the public service department of the city of Burbank testified in effect that the city was not an active prospect as a purchaser of the property up to about

March of 1957. He testified further with reference to the various ramifications involved in the surveys and in the bond elections and of the various views of the interested parties as to where the plant was to be located.

Appellant now asserts that he is entitled under the circumstances to a real estate broker's commission of 5 per cent of the sales price of the property to the city. Civil Code section 1624 provides in part as follows:

''The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:

''4. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged;

''5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission; . . .''

Plaintiff in the first instance did have a written instrument subscribed by the party to be charged which spelled out in effect his rights. After December 31, 1956, however the plaintiff had no such effective writing.

Volume 9, California Jurisprudence 2d, Brokers, section 44, page 190 states, ''If a definite time for the continuance of a broker's agency is fixed in the employment agreement, his authority terminates upon the lapse of that time.'' The plaintiff should have known, under the circumstances, that unless the employment was evidenced by a writing he could not recover under either an oral contract or in *quantum meruit.* (See *Augustine* v. *Trucco,* 124 Cal. App.2d 229 [268 P.2d 780]; *Pacific Southwest Development Corp.* v. *Western Pac. R.R. Co.,* 47 Cal.2d 62 [301 P.2d 825].)

There is substantial evidence in the record to the effect that the city was not and could not have been an active prospect for the purchase of the real property in question until after the bond election in February 1957. Further, there is ample evidence in the record to the effect that the plaintiff did not produce the city as a purchaser which was ready, willing and able to purchase the defendant's property on the terms which were agreeable to the defendant. It was stated in *Zeimer* v. *Antisell,* 75 Cal. 509, 511-512 [17 P. 642]:

''. . . And before a broker can be said to have earned

his commission, it must also be shown that he produced a purchaser, who was ready and willing to make the purchase on terms satisfactory to his employer, and that he was the efficient agent or procuring cause of the sale. [Citations.]

" 'The duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until this is done, his right to commissions does not accrue.' [Citation.] ▮ It must further appear that the broker performed the duty assumed by him within the time limited in his contract, or within such extension of time as may have been granted by his employer. If he failed to do that, he is not entitled to the commission, even though he made efforts to sell the property, and first called to it the attention of the party who subsequently made the purchase, unless the delay was caused by the negligence, fault or fraud of the owner. [Citations.] "

The contract between the city and the defendant provided among other things as follows: "The purchaser . . . represents to the vendor that no broker or brokers were instrumental in procuring this Agreement or the sale of the real estate to it."

▮ It is clear from the evidence and the court found that the sale of the land was pursuant to a settlement of the condemnation action by the city of Burbank against the defendant.

In *Haigler* v. *Ingle*, 119 Colo. 145 [200 P.2d 913], the court said at page 914 [200 P.2d] :

"In plaintiff's brief it is said, with commendable frankness, that the real question for determination here is, 'Did condemnation constitute sale entitling broker to commission?' In *Wilson* v. *Frederick R. Ross Investment Co.*, 116 Colo. 249 [180 P.2d 226, 170 A.L.R. 1410], a very similar, if not identical question was presented, and therein we held adversely to plaintiff's contention here. We there ruled that where title to lands is acquired in eminent domain proceedings, this does not constitute a sale such as would ordinarily entitle a broker, with whom the lands were listed for sale, to a commission under his contract of listing."

In the *Wilson* case above referred to the court stated at page 229 [180 P.2d] :

"This case, therefore, presents a clear-cut issue of whether the unexpected condemnation by the government . . . operates as a sale so as to entitle the brokers to a commission . . ."

Continuing further at pages 231-232 [180 P.2d] :

''We conclude, therefore, that the express option contracts have not been performed by the condemnation proceedings. For the federal government, exercising its right of eminent domain, moved in on the landowner's property and, like a sudden avalanche from the mountains above, occupied what land it sought to take—without warning to the owner. Two most important details in every purchase and sale are thus unceremoniously and completely removed from the owner's field of negotiation, i.e., what property should be sold and the time when possession should be given. The federal government, regardless of the landowner's desires, takes over what property it wishes and relentlessly moves in on it without consulting the owner.

''The owner is further limited in a third detail, i.e., the power to negotiate as to the price. In the usual bargaining between seller and purchaser, the seller is in a position where he does not have to convey if the purchaser does not meet his terms; in a condemnation proceeding, the owner has lost the power to withhold the property or any portion of it; his field of negotiation is narrowed down to the two choices, (1) reaching an accord in respect to compensation for the property condemned, or (2) contesting the case in court. The owner is in court whether he wants to be or not, and his only alternatives are to settle or litigate. He has lost his power to settle advantageously because at a time when of all times he should have possession, or the right to possession, of his property he has irrevocably lost it. . . .

''We believe that the result we have reached is in accord with the better rule, for, without questioning the good faith of any of the parties involved in this particular case, it can be noted that as a matter of practice a real estate broker can protect himself by disclosing to his principal the possibility of condemnation proceedings and cover this contingency in his contract for commission.''

In *Shaw* v. *Avenue D Stores, Inc.*, 115 N.Y.S.2d 194, the court quoted extensively from the above-cited cases and said at page 197:

''In the absence of a specific provision in a broker's contract to the contrary, disposition of the title to real estate through condemnation proceedings does not constitute a sale, transfer or assignment.''

The appellant insists that the respondent urged and encouraged him to proceed in procuring a purchaser after the

expiration of his written authority. However, there was evidence to the contrary.

We have carefully read the entire record in this case. The matter was fairly and properly tried, the findings are amply supported by the evidence, and the judgment is supported by the findings.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 24, 1961, and appellant's petition for a hearing by the Supreme Court was denied November 29, 1961.