[No. 11403-8-II.   Division Two.   August 17, 1988.]

LUNDSTROM, INC., *Appellant,* v. NIKKEI CONCERNS, INC., *Respondent.*

*James A. Krueger, James R. Verellen,* and *Kane, Vandeberg, Hartinger & Walker,* for appellant.

*Warren J. Rheaume, Peter S. Ehrlichman,* and *Foster, Pepper & Riviera,* for respondent.

REED, C.J.—Lundstrom, Inc., appeals a directed verdict in favor of Nikkei Concerns, Inc., in Lundstrom's action to recover a real estate broker's commission on a transfer of Nikkei's property to the Pierce County Public Transportation Benefit Area Authority (Pierce Transit). The dispositive issue is whether the transaction was the equivalent of a condemnation. We hold that it was and affirm.

In May 1984, Nikkei appointed Lundstrom as its agent with the right to sell a parcel of land in Pierce County. In the exclusive listing agreement, which expired September 21, 1984, Nikkei agreed that:

> [I]n the event a sale is effected by [Lundstrom] or if [Lundstrom] produces a party who is ready, willing and able to purchase on the terms of this agreement, or as the same may be modified in writing by owner and broker, that [Nikkei] will pay broker a commission for services as follows: 7% of sale price. All cash at closing.

In another paragraph, Nikkei agreed that:

> should a transaction in conformity with the terms hereof be pending at the expiration of the term of this agreement, or should such a transaction be completed within one year of the expiration of said term with any party to whom [Lundstrom or its agent] had exposed the subject property, this agreement shall extend to cover such transaction as if made pursuant hereto for the commission set out above.

In June 1984, Pierce Transit sent Nikkei a letter with the subject heading "Procedures for Property Acquisition." This notice advised Nikkei that "Pierce Transit had selected your property as part of a parcel which is needed for the site of a new Maintenance and Operations Base. Pierce Transit will be purchasing your property with the assistance of federal funds. . . ." Federal approval was required for the property acquisition, and made the acqui-. sition date uncertain, but Pierce Transit explained:

[i]t is our intention to use the following procedure to purchase your property once the federal approval has been received:
1. A professional appraisal firm retained by Pierce Transit will call on you to arrange for an inspection of your property. You, or your designated representative, may accompany the appraiser if you wish.
2. A representative of Pierce Transit will then make an offer for the purchase of your property based upon the appraisal.
3. Upon agreement of a sale price, the representative will provide you with information on the relocation assistance which is available to you through Pierce Transit.

Mike Brewer, an associate broker with Lundstrom, learned of the Pierce Transit letter from Nikkei's tenant, and Lundstrom notified Larry Yok, of Pierce Transit, that Lundstrom had the exclusive listing agreement for sale of the property. When Yok advised Lundstrom that Pierce Transit required written acknowledgment of a representative's authority to act on a property owner's behalf, Brewer explained this to Nikkei and drafted a letter for Nikkei to send to Pierce Transit. Nikkei revised the letter and returned it to Brewer, who forwarded it to Pierce Transit. In its final form, this letter stated:

At your request, we are sending this letter concerning our representative on the above property. Nikkei Concerns is under an exclusive listing agreement with Lundstrom, Inc., until September 21, 1984. Mr. Michael Brewer is the listing agent for sale of the above property. By that agreement, Mr. Brewer and his company would be the designated representative under the property

acquisition procedures outlined in your letter of June 20, 1984.

Please contact Mr. Brewer, telephone 584–2000, for any further information on this property.

Brewer, who was not familiar with condemnation proceedings, contacted the Pierce Transit appraisers and showed the property to one of them. He regarded Pierce Transit as any other purchaser, and attempted to obtain a high appraisal for the sale, but he did not discuss the price or terms with Nikkei, because these were established in the listing agreement. When the agreement expired, Nikkei refused to extend it, and Brewer ceased his efforts.

Based on the appraisal, Pierce Transit offered Nikkei $400,000 on the property. Nikkei was dissatisfied with this offer, which as well below the $432,000 net proceeds it had hoped to realize from a sale of Mr. Lucky's, and sought its own appraisal. Meanwhile, Pierce Transit experienced serious difficulties in its negotiations with other property owners involved in the acquisition, and filed formal condemnation proceedings against all the property owners, including Nikkei. When Nikkei was able to document an appraised value of $425,000 for its property, Pierce Transit accepted this appraisal. The condemnation proceeding against Nikkei was settled for this amount, by a "Stipulation, Judgment, and Decree of Appropriation," filed July 18, 1985.

When Lundstrom learned of the settlement, it filed this action to recover a commission on the transaction. It based its claim solely on the listing agreement. Following Lundstrom's case in chief, Nikkei moved for a directed verdict, which the trial court granted. The court noted that the agreement was silent about a condemnation and should be construed against the drafter, Lundstrom. It held that the transaction was not a sale under the agreement's terms, because Nikkei was not a willing seller. Lundstrom appeals, arguing that it is entitled to a commission based on the extension provision in the agreement.

The rules for appellate review of an order directing verdict in favor of a party are well established: (1) evidence must be considered in favor of the nonmoving party; (2) no discretion is involved; and (3) the directed verdict will be upheld where there is no competent evidence, nor reasonable inferences arising therefrom, which would sustain a jury verdict in favor of the nonmoving party.

*Oliver v. Pacific Northwest Bell Tel. Co.,* 106 Wn.2d 675, 678, 724 P.2d 1003 (1986). When an appeal requires an interpretation of an agreement creating parties' contractual rights, it presents a question of law, which this court may decide. *Chemical Bank v. WPPSS,* 102 Wn.2d 874, 894, 691 P.2d 524 (1984), *cert. denied sub nom. Chemical Bank v. PUD 1,* 471 U.S. 1075, 85 L. Ed. 2d 510, 105 S. Ct. 2154 (1985).

Essentially, Lundstrom urges this court to interpret the term "sale" as used in the exclusive listing agreement to include Nikkei's transfer of property to Pierce Transit. We have found no Washington cases that decide the question of whether a condemnation is a sale that entitles a broker to recover a commission. The jurisdictions that have considered the question have consistently held that, in the absence of a specific provision in the agreement or a specific indication of the parties' intent, a transfer of property by condemnation is not a sale that entitles a broker to recover a commission under a listing agreement. *Dauer v. Pichowski,* 413 So. 2d 62 (Fla. Dist. Ct. App.), *review denied,* 419 So. 2d 1199 (Fla. 1982); *Preston v. Carnation Co.,* 196 Cal. App. 2d 43, 16 Cal. Rptr. 240, 243–44 (1961); *Shaw v. Avenue D Stores, Inc.,* 115 N.Y.S.2d 194, 196–97 (Sup. Ct. 1952); *Haigler v. Ingle,* 119 Colo. 145, 200 P.2d 913 (1948). Similarly, a broker was not entitled to a commission where the government notified the property owner of its intent to acquire the land, and the parties negotiated a transfer of the property without commencing formal condemnation proceedings, because the transaction was a taking and the functional equivalent of a condemnation. *Mealey v. Orlich,* 120 Ariz. 321, 585 P.2d 1233 (1978). These cases have relied

on the rationale enunciated in *Wilson v. Frederick R. Ross Inv. Co.,* 116 Colo. 249, 180 P.2d 226, 231, 170 A.L.R. 1410 (1947), which distinguished a condemnation from a sale because the property owner loses certain powers with respect to the transaction: the owner cannot designate or negotiate the property that is to be sold; the owner cannot determine when the grantee may take possession; and the owner cannot refuse to transfer the property if the offered price is inadequate, but must reach an accord or litigate the question of just compensation.

Lundstrom cites two cases in which the courts have departed from the above rule. However, in each, the owner contracted with the broker to sell the property to the government, and problems arose that led to a condemnation instead of the voluntary sale. In *Keyes Co. v. Florida Nursing Corp.,* 340 So. 2d 1254 (Fla. Dist. Ct. App. 1976), the owner refused the County's offer, and the County initiated condemnation proceedings. The particular facts presented a jury question as to whether the owner frustrated the sale to avoid paying the commission under a listing agreement that was not limited to commission on a *sale.* In *Tyler v. Seiler,* 76 Misc. 185, 136 N.Y.S. 394 (1912), the City condemned the property in order to clear a defect in the seller's title that had prevented a voluntary sale, and the court permitted the broker to recover, relying on the rule that a broker is entitled to a commission where the sale fails because of a defect in the seller's title. Neither case disregarded the general rule, and later cases in the same jurisdictions, *Dauer v. Pichowski, supra,* and *Shaw v. Avenue D Stores, Inc., supra,* have adhered to that rule.

■ We also believe that the general rule is soundly reasoned, based on the *Wilson* rationale. When a governmental agency takes property under its power of eminent domain, by condemnation proceedings or by a negotiated transaction, the transfer is not a "sale" within the terms of an agreement entitling the broker to a commission on a sale of the property, unless the agreement specifies otherwise or clearly contemplates a sale to the agency. The exclusive

listing agreement contained no reference to eminent domain, condemnation, a taking, or a sale to any governmental agency. In the transaction with Pierce Transit, Nikkei faced the limitations mentioned by *Wilson*: it was required to convey the entire property, according to Pierce Transit's schedule, at a price Pierce Transit approved. The transfer of Mr. Lucky's to Pierce Transit was not a sale that entitled Lundstrom to a commission under the exclusive listing agreement.

Lundstrom points out that after the exclusive listing agreement, Nikkei notified Pierce Transit that Brewer was its designated representative under the property acquisition procedures. Thus, the letter quoted above raises the possibility that the parties varied their original agreement. Because Lundstrom based its claim at trial entirely on the listing agreement, we question whether Lundstrom adequately raised this issue at trial. "Failure to raise an issue before the trial court generally precludes a party from raising it on appeal." *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Even if the issue is properly before us, the evidence presented clearly indicates that this letter was intended only to advise Pierce Transit of the listing agreement and of the parties' intent to abide by the agreement in negotiating a voluntary sale. No evidence suggests that the parties understood that Pierce Transit was acting pursuant to its power of eminent domain. Instead, Brewer, who drafted the letter, indicated that he regarded Pierce Transit as another potential purchaser. The letter from Pierce Transit to Nikkei indicated that Pierce Transit would make an offer and seek to reach a purchase agreement with Nikkei. Even taking the evidence presented, and the reasonable inferences therefrom, in the light most favorable to Lundstrom, it is clear that the parties did not contemplate that Pierce Transit was taking or threatening to take the property, but believed that it was the sort of "ordinary buyer in the marketplace" originally contemplated by the listing agreement. They could not have intended this letter

to authorize Brewer to receive a commission on the involuntary transaction with Pierce Transit. Because the letter did not vary the listing agreement but merely advised Pierce Transit of the agreement, and because the conveyance to Pierce Transit was not a sale entitling Lundstrom to a commission under the listing agreement, the trial court properly directed a verdict in favor of Nikkei.

PETRICH and WORSWICK, JJ., concur.