Filed 1/16/14  Coachella Valley Water Dist. V. McMaken CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| COACHELLA VALLEY WATER DISTRICT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOAN McMAKEN as Trustee, etc.,<br><br>        Defendant and Respondent;<br><br>JAMES GERARD et al.,<br>        Defendants and Appellants;<br><br>NICHOLAS GERARD et al.,<br><br>        Defendants in Intervention and Respondents. | E053851<br><br>(Super.Ct.No. CIVSS816045)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Affirmed.

Mahaffey & Associates and Douglas L. Mahaffey for Defendants and Appellants.

1

Farmer & Ridley, Richard D. Cleary; Oliver, Sandifer & Murphy, Duff Murphy, and Jennifer L. Pancake for Defendant and Respondent.

Dabney B. Finch; Lieberg, Oberhansley, Strohmeyer & Garn and William H. Strohmeyer for Defendants in Intervention and Respondents.

I

INTRODUCTION

In this eminent domain action, appellants and defendants James Gerard and Patricia Gerard (referred to collectively as James Gerard) appeal summary judgment entered against them and in favor of defendants and respondents, Joan C. McMaken, individually and as successor trustee of the Dennis Cooney Living Trust (referred to as McMaken) and Nicholas and Ricardo Gerard (collectively referred to as the Gerard sons). The trial court granted McMaken's motion for summary adjudication, deeming it a motion for summary judgment because it disposed of James Gerard's entire claim to the condemnation proceeds.[1] The trial court concluded it was undisputed James Gerard had no enforceable interest in the undeveloped real property that is the subject of the instant eminent domain action (Property), because his property interest is barred by the statute of frauds. Therefore he is not entitled to any compensation for the taking of the Property by Coachella Valley Water District (Coachella).

James Gerard contends his interest in the Property is not barred by the statute of frauds because it is based on an oral assignment of a partnership or joint venture interest

_____

[1] We therefore refer to McMaken's motion in this opinion as a summary judgment motion and treat it as such, as did the trial court.

2

to share in the profits from the sale of the Property, and such an interest is personal property, which is not subject to the statute of frauds. James Gerard argues that the issues of whether there was a joint venture or partnership interest and whether there was an enforceable verbal assignment of a personal property interest in the Property, rather than a real property interest, are triable issues of fact.

McMaken and the Gerard sons argue James Gerard's appeal is moot because he did not appeal the interlocutory judgment apportioning the condemnation proceeds. We disagree. James Gerard's appeal is not moot because the stipulated apportionment judgment was entered after the trial court granted summary judgment against James Gerard. On the merits of James Gerard's appeal, we conclude it is undisputed that James Gerard was orally assigned a 50 percent ownership interest in the Property and, since the assignment was not in writing and concerned a real property interest, the assignment is unenforceable under the statute of frauds. We therefore affirm summary judgment against James Gerard because his claim to the Property and condemnation proceeds is barred by the statute of frauds as a matter of law. We need not address James Gerard's other contentions since summary judgment was proper based on the statute of frauds.

II

FACTS

Dennis Cooney acquired title to the Property located in La Quinta, with the

3

assistance of Richard Meyer.  On March 30, 1987, Richard Gerard[2] entered into a written, signed agreement with Cooney, entitled "Sale Agreement" (referred to in this opinion as the "Sale Agreement").  The Sale Agreement states that Cooney and Richard agreed that: "Cooney hereby sells to GERARD 50% ownership interest" in the Property for $40,500, with title to the Property to remain in Cooney's name.

According to Meyer's testimony, Cooney did not have the funds to purchase the Property.  The purchase price was approximately $81,000.  Richard provided $81,000 in funds for the down payment to purchase the Property and the installment payment on the remaining note.  Title to the Property was to remain in Cooney's name because Richard participated in illegal bookmaking activities.

In June 1989, Richard told his brother, James, he was transferring all of his assets to James, including his interest in the Property under the Sale Agreement.  Richard gave James a copy of the Sale Agreement and the keys to his safe deposit box, where the Sale Agreement and other assets were located.  At the time, Richard believed criminal charges against him were imminent.  James testified that Richard told him that he wanted his assets transferred to James because "[h]e didn't want to have any assets that could be attached to him"; "so they don't become part of any legal proceedings against him should he [become] involved in some sort of legal case because of his bookie activity."

After disposing of his assets, Richard was charged in February 1990, with bookmaking crimes, allegedly committed between April 4, 1989, and June 14, 1989.  In

---

[2] We refer to Richard Gerard and James Gerard in their individual capacity by their first names, since they share common last names.

July 1990, Richard pled guilty to one count of felony bookmaking, based on accepting bets on professional sports games in May 1989, which was a month before Richard told James he was transferring his interest in the Property to James. Richard died unexpectedly in July 1990.

In September 2001, Cooney, who was dying of cancer, transferred his interest in the Property to his living trust, entitled "Dennis Cooney Living Trust" (the trust). No mention is made in the trust of James's interest in the Property. The trust, however, directed the payment of $100,000 to be made to James when the Property was sold, and for the balance of the sale proceeds to be paid pursuant to the "preexisting agreement" (the Sale Agreement). After Cooney died in April 2002, his sister, McMaken, became successor trustee of the trust, sole beneficiary, and owner of Cooney's interest in the Property. In July 2007, McMaken, as trustee, paid James $100,000 from Cooney's trust, even though the Property had not yet been sold.

In November 2007, Coachella filed the instant eminent domain action to take the Property for a water recharge facility. McMaken and James Gerard were named as defendant claimants to the Property. James Gerard and McMaken filed answers to the complaint. Upon becoming aware of the eminent domain action, Richard's sons intervened in the action and filed an answer to the complaint. In October 2009, the trial court entered an interlocutory judgment awarding Coachella the Property and approving the sale of the Property for approximately $8 million. The condemnation proceeds were deposited with the California State Treasury, leaving the sole issue of apportionment of the proceeds.

In November 2010, McMaken filed a motion for summary adjudication of James Gerard's answer to the eminent domain action. McMaken argued in her motion that James Gerard had no interest in the condemnation proceeds because his claim was barred by the statute of frauds, the statute of limitations, and the doctrine of unclean hands. James Gerard opposed McMaken's motion, arguing it was procedurally defective, McMaken did not have standing to challenge his interest in the Property, and the statute of frauds did not apply because James Gerard was claiming a personal property interest in the Property, not a real property interest.

On January 27, 2011, the trial court heard and granted McMaken's motion for summary adjudication, deeming it a motion for summary judgment because it disposed of James Gerard's entire claim to the condemnation proceeds. The court granted summary judgment against James Gerard on the ground his interest in the Property was barred by the statute of frauds and therefore James Gerard did not have any interest in the condemnation proceeds.

After granting McMaken's motion as to James Gerard's claim, the trial court heard and denied a second motion brought by McMaken against the Gerard sons' claim to the condemnation proceeds. The court found that under the Sale Agreement, Cooney transferred a 50 percent ownership interest in the Property to Richard, held in a resulting trust, and that interest in the Property transferred intestate to the Gerard sons upon Richard's death.

James Gerard filed a motion for reconsideration of the ruling granting summary judgment against him, which the trial court denied.

6

On March 7, 2011, McMaken and the Gerard sons stipulated to apportionment of the proceeds, and the stipulation was entered as judgment on March 8, 2011 (apportionment judgment). On April 28, 2011, the trial court executed and filed judgment on McMaken's summary judgment motion granted against James Gerard.

III

APPEAL IS NOT MOOT

McMaken and the Gerard sons contend this appeal is moot because James Gerard did not appeal the March 8, 2011 apportionment judgment, which determined the amount of the condemnation proceeds to be paid to each defendant claimant.

A. *Procedural Background Relating to Whether Appeal Is Moot*

When Coachella filed its eminent domain action, it deposited the estimated condemnation proceeds with the State Treasurer's Office. In 2008, Coachella took possession of the Property pursuant to an order for prejudgment possession. In October 2009, the trial court entered an interlocutory judgment in the action, authorizing Coachella to acquire the Property by eminent domain. The parties, including Coachella, McMaken and James Gerard, agreed that the fair market value of the Property was $8.1 million, and this amount was the total just compensation, award, and damages to be paid for the taking of the Property.

The October 2009 interlocutory judgment further stated that McMaken and James Gerard had not resolved their differences regarding their respective rights to compensation awarded for the Property. Therefore the issue of apportionment of the condemnation award between McMaken and Gerard, and a determination of their

7

respective rights to the Property and compensation awards remained to be decided by the trial court. Upon deposit of the required amount of condemnation proceeds, the trial court entered a final order of condemnation for the Property, condemned in fee simple for the public use, and Coachella took fee simple title to the Property, with all defendants' interests and title in the Property terminating. The trial court retained jurisdiction for purposes of determining the interests of McMaken and James Gerard in the Property and to apportionment of the condemnation award.

Several months later, the Gerard sons intervened in the action.

The trial court heard and granted McMaken's summary judgment motion against James Gerard on January 27, 2011. The court noted that the motion was actually a motion for summary judgment because, as is commonly the case with eminent domain actions, the taking of the Property and setting of just compensation had already concluded and the only remaining issues were those of the parties' rights to distribution. The court concluded that since James Gerard did not have any interest in the Property or condemnation proceeds, judgment should be entered against him and his claim dismissed.

The other defendants' claims to the condemnation proceeds proceeded to trial and were settled on March 7, 2011. The Gerard sons and McMaken stipulated in court to the division of the condemnation proceeds and, on March 8, 2011, the trial court entered a stipulated judgment of apportionment, incorporating the terms of the settlement agreement. James Gerard did not appeal the March 8, 2011 apportionment judgment.

On March 15, 2011, the State of California issued a check to the Gerard sons and their attorney for their stipulated portion of the condemnation proceeds ($2.225 million), in accordance with the apportionment judgment.

On April 28, 2011, the trial court entered and filed judgment on McMaken's motion for summary judgment against James Gerard. In the judgment, the court ordered and decreed that James Gerard had no interest in the Property and was not entitled to any portion of the eminent domain award for Coachella's taking of the Property. James Gerard filed a notice of appeal of the April 28, 2011 judgment.

*B. Discussion*

McMaken and the Gerard sons (respondents) argue James Gerard's appeal is moot because James Gerard did not appeal the March 8, 2011 apportionment judgment, which determined the distribution of the condemnation proceeds and brought the eminent domain action to a final conclusion. Respondents assert that, because the apportionment judgment is final and the condemnation proceeds have been distributed, there would be no effective relief if this court decided the instant appeal in James Gerard's favor.

Generally, an appeal is moot if there is no longer a justiciable controversy. "California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . .' [Citations.] Justiciability thus 'involves the intertwined criteria of ripeness and standing. A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.'

9

[Citation.] But 'ripeness is not a static state' [citation], and a case that presents a true controversy at its inception becomes moot "'"if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character."'"" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson* ); see also *Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 174 (*Lockaway*).)

Here, there remains the justiciable issue of whether James Gerard has any interest in the Property and, if so, what portion of the condemnation proceeds James Gerard is entitled to receive. Although the proceeds have been distributed to respondents, this does not preclude James Gerard from seeking reimbursement for the portion of proceeds that should have been distributed to him in the event this court reverses summary judgment. On the other hand, the effect of dismissing James Gerard's appeal as moot would result in finality of the determination that James Gerard has no interest in the condemnation proceeds and preclude James Gerard from recovering his share of the proceeds. Even though the proceeds have been apportioned and distributed, the essential character of the controversy in the instant case has not been lost as to James Gerard's claim to the proceeds.

"The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become 'overripe' and is therefore moot." (*Wilson, supra,* 191 Cal.App.4th at p. 1574; *Lockaway, supra,* 216 Cal.App.4th pp. 174-175.) By the same token, an appeal is moot if "'the occurrence of events renders it

10

impossible for the appellate court to grant appellant any effective relief.'"  (*Santa Monica Baykeeper v. City of Malibu* (2011) 193 Cal.App.4th 1538, 1547; *Lockaway,* at p. 175.)

*(1)  Effective Relief*

Respondents argue entry of the apportionment judgment and distribution of the condemnation proceeds precludes any effective relief.  We disagree.  There remains the possibility of effectual relief upon remanding the matter to the trial court for determination of whether James Gerard has an interest in the Property and his share of the proceeds.  Although the court entered a final, stipulated judgment determining the division of the condemnation proceeds, the court did not address James Gerard's claim to the proceeds because he was excluded as a potential claimant through summary judgment.

Respondents assert that the trial court no longer has jurisdiction over the matter because the trial court entered a final apportionment judgment, resulting in distribution of the condemnation proceeds.  But if James Gerard prevails on his appeal, the trial court will still have jurisdiction to decide the justiciable issue of whether James Gerard has any interest in the Property and condemnation proceeds, and if so, the portion of the proceeds is he is entitled to receive.  Although the proceeds are no longer deposited with the state treasurer's office, James Gerard could recover his share through judgment enforcement proceedings.

Respondents further argue James Gerard was required to appeal, not only the April 28, 2011 summary judgment, but also the March 8, 2011 apportionment judgment.  But James Gerard was not a real party in interest when the apportionment judgment was

11

entered because summary judgment had been granted against him in January 2011. James Gerard therefore was not required to appeal the March 8, 2011 apportionment judgment, nor could he, because summary judgment terminates the action between the parties. In turn, James Gerard also did not have standing to appeal the March 8, 2011 stipulated apportionment judgment. A person who was a party but ceased to be a party as a result of dismissal from the action ordinarily has no appellate standing. (*Bates v. John Deere Co.* (1983) 148 Cal.App.3d 40, 53 [would-be appellant initially became a party by complaint-in-intervention but its complaint was thereafter dismissed at its request]. In the instant case, James Gerard was no longer a party for purposes of standing to appeal the March 8, 2011 apportionment judgment because summary judgment had previously been granted against him.

Respondents argue that under Code of Civil Procedure section 1250.220, subdivision (d),[3] the apportionment judgment is binding and conclusive on James Gerard. Section 1250.220, subdivision (d) states: "A judgment rendered in a proceeding under this title is binding and conclusive upon all persons named as defendants as provided in this section and properly served." Here, however, the judgment was entered after James Gerard was no longer a party to the apportionment proceedings because the trial court granted summary judgment against him. As a consequence, the apportionment judgment was not binding or conclusive on James Gerard.

---

[3] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

Respondents' reliance on *Mendocino County v. Peters* (1905) 2 Cal.App. 34, for the proposition James Gerard's appeal is moot, is misplaced as well. In that case, the defendant claimant in a condemnation proceeding appealed a condemnation order and an order granting the plaintiff possession of the condemned Property. The *Peters* court affirmed the condemnation order but dismissed the appeal to the order granting possession of the Property, as moot, because the first order passed title and the right of possession to the plaintiff. In the instant case, there is no dispute or challenge to the condemnation judgment or to the orders and interlocutory judgments passing title, right of possession, and determination of the amount of just compensation to be paid by the plaintiff. Unlike in *Peters*, here, the sole remaining issue is apportionment of the condemnation proceeds. The apportionment judgment did not address James Gerard's claim, since summary judgment had been granted against him. Therefore, if the matter were remanded to the trial court, determination of whether James Gerard has an interest in the condemnation proceeds could be adjudicated. Apportionment was determined only as to respondents.

Respondents' reliance on *First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798, is misplaced. The case involved a judgment which resulted in the sale of defendant Fegen's real property before the appeal was decided. This rendered Fegen's appeal moot because the property sale was absolute and could not be set aside for any reason under section 701.680, subdivision (a). The instant appeal does not concern the erroneous, irreversible sale of real property. Rather, it concerns the apportionment and distribution of condemnation proceeds which are not unique, one-of-a-kind property and

13

therefore can be redistributed, taking into consideration James Gerard's additional claim, which was excluded and thus not taken into account when the apportionment judgment was entered. Although the appropriation judgment is final as between McMaken and the Gerard sons, it is not final and binding on James Gerard because there was never a final determination as to his interest in the Property and share of the condemnation proceeds. If successful on appeal, James Gerard would be entitled to adjudication of his claim and the previous apportionment judgment would not preclude such determination or relief as to the conflicting interests of James Gerard and the Gerard sons in the Property and condemnation proceeds.

*(2) In Rem Jurisdiction*

Respondents argue that once the condemnation proceeds were distributed, the trial court lost jurisdiction over the case because the eminent domain action is an in rem proceeding, in which jurisdiction is founded on the res or property. Once the res is gone, the trial court no longer has in rem jurisdiction of the matter. This proposition has no merit, as rejected in *Republic National Bank of Miami v. U.S.* (1992) 506 U.S. 80, 84-86. As the court in *Republic National Bank* explained with regard to in rem forfeiture proceedings: "Certainly, it long has been understood that a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding. [Citations.]" (*Id.* at p. 84.) The court in *Republic National Bank* further noted, however, that retention of the res throughout the proceedings is not necessary to maintain jurisdiction over an *in rem* forfeiture action. Jurisdiction, once vested, is not divested, although in some cases there

14

might be an exception to the rule where the release of the property would render the proceedings moot. (*Ibid.*)

The res in the instant eminent domain action is the Property, not the condemnation proceeds. The sale of the Property and distribution of the proceeds did not terminate jurisdiction over the remaining issue of determination of James Gerard's interest in the condemnation proceeds. If this court were to remand this matter to the trial court, the trial court would still have jurisdiction to determine whether James Gerard has an interest in the Property.

The interlocutory order apportioning the proceeds between McMaken and the Gerard sons was not conclusive and final as to James Gerard because summary judgment had been granted against him and he was no longer a real party in interest to the apportionment proceedings at the time of entry of the apportionment judgment. The trial court therefore retained subject matter jurisdiction over James Gerard's claim, even though the proceeds were prematurely distributed before James Gerard's claim to the proceeds was resolved. This appeal is not moot because, if summary judgment against James Gerard is reversed, James Gerard can obtain effective relief in the form of a trial court adjudication of his interest in the Property and condemnation proceeds. A judgment in James Gerard's favor, declaring James Gerard to have title to the condemnation proceeds superior to the Gerard sons' intestate interest, could thereafter be enforced through judgment enforcement proceedings.

15

## IV

## SUMMARY JUDGMENT

James Gerard contends the trial court erred in granting McMaken's motion for summary adjudication against him.

### A. *Summary Judgment Standard of Review*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, fn. omitted.) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (§ 437c, subd. (p)(2); *Aguilar,* at p. 850.) The party opposing summary judgment "may not rely upon the mere allegations or denials of its pleadings," but rather "shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (§ 437c, subd. (p)(2).) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar,* at p. 850.) We affirm summary judgment where it is shown that no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar,* at p. 860.)

*B.  The Right to Recover Condemnation Proceeds*

The takings clause of the Fifth Amendment guarantees the right to not have property taken without just compensation.  (*National City Business Assn. v. City of National City* (1983) 146 Cal.App.3d 1060, 1065.)  "'The state's power to take property by eminent domain is conditioned on its obligation to pay "just compensation" to the owner.'"  (*City and County of San Francisco v. Coyne* (2008) 168 Cal.App.4th 1515, 1521.)  Only an "owner of property acquired by eminent domain is entitled to compensation."  (§ 1263.010, subd. (a).)  This includes anyone who has a legal or equitable interest in the property described in the eminent domain complaint.  (§ 1250.230, subd. (a).)

McMaken's motion for summary judgment was between defendants asserting conflicting claims to the Property condemnation proceeds.  In effect, the claimants were asserting cross-claims against each other as to their share of the condemnation proceeds but, under section 1260.220, "defendants with conflicting interests in condemned property [may] litigate their adverse claims in the condemnation award without the necessity of filing a cross-complaint."  (*County of San Diego v. Miller* (1980) 102 Cal.App.3d 424, 432.)  The trial court was required to resolve the conflicting interests in the Property and apportion the proceeds among the claimants in accordance with their respective rights and interests in the Property.  (§ 1260.220.)  As the moving party, McMaken had the burden of establishing that James Gerard had no valid ownership interest in the Property.  Upon McMaken meeting that burden, the burden shifted to

17

James Gerard to produce evidence that he had a legal or equitable interest in the Property, thereby raising a triable issue of fact as to his right to condemnation proceeds.

*C.  The Statute of Frauds*

The trial court granted McMaken's summary judgment motion against James Gerard on the ground he did not have any interest in the Property based on the statute of frauds.  Under the statute of frauds, an agreement for transfer of an interest in real property is invalid unless it "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged."  (Civ. Code, § 1624, subd. (a).)

James Gerard argues that McMaken cannot rely on the statute of frauds in her summary judgment motion because she did not assert it as an affirmative defense in her answer to the eminent domain complaint.  McMaken was not required to file an answer to codefendants' answers or cross-complain against codefendants.  This is because eminent domain actions are unique proceedings in which "[t]he plaintiff may require that the amount of compensation be first determined as between plaintiff and all defendants claiming an interest in the property.  Thereafter, in the same proceeding, the trier of fact shall determine the respective rights of the defendants in and to the amount of compensation awarded and shall apportion the award accordingly."  (§ 1260.220, subd. (b).)

The purpose for requiring a defendant in a condemnation action to set forth his interest in the condemned property by way of answer is to enable the condemner to acquire clear title to property needed for public purposes as expediently as possible.  (*Redevelopment Agency v. Penzner* (1970) 8 Cal.App.3d 417, 423.)  Eminent domain

18

actions are special proceedings, in which the rules of pleading (§§ 1250.320 and 1260.220) are streamlined "by making it possible for defendants having conflicting interests in property condemned by a public agency to litigate their adverse claims to the condemnation award without the necessity of filing cross-complaints." (*Penzner,* at p. 423.) As defendants in the eminent domain action, both McMaken and James Gerard filed answers to the complaint stating the extent of their interests in the Property. Under section 1250.320, subdivision (a), this was all that was required to be pled by those claiming an interest in the property. McMaken was not required to allege affirmative defenses against codefendants' claims in her answer to the eminent domain complaint. (*Penzner,* at p. 423.)

Even though McMaken did not include in her answer the statute of frauds as an affirmative defense, it was clear from the nature of the eminent domain action and the respondents' answers to the complaint that they were claiming an interest in the condemnation proceeds and opposing any conflicting interests. Furthermore, James Gerard was on notice of the statute of frauds defense to his claim because the Gerard sons alleged it in their answer and McMaken raised it in her motion for summary judgment. "['I]t would be unfair to ground a ruling on the inadequacy of the pleadings *if* the pleadings, read in the light of the facts adduced in the summary judgment proceeding, give notice to the plaintiffs of a potentially meritorious defense." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 384-385; *Thornton v. Victor Meat Co.* (1968) 260 Cal.App.2d 452, 461.)

19

As to the merits of McMaken's summary judgment motion, McMaken met her burden of producing evidence that James Gerard's claim was barred by the statute of frauds, and James Gerard failed to refute the statute of frauds bar.

*(1) Cooney's Sale of a 50 Percent Ownership Interest in the Property to Richard*

It is undisputed James Gerard's interest in the Property is founded on Richard's purchase of a 50 percent interest in the Property from Cooney in 1987. A copy of a grant deed dated March 3, 1987, and recorded on April 1, 1987, shows that title to the Property was transferred to Cooney. A written agreement, entitled, "SALE AGREEMENT," dated March 30, 1987, states that it was agreed between Cooney and Richard that: "1) Cooney hereby sells to GERARD 50% ownership interest in the parcels [the Property] for the sum of $40,500. [¶] 2) Said sale is subject to the Option Agreement between Cooney and Meyer dated March 1, 1987. [¶] 3) As a matter of convenience, title to the properties shall remain in Dennis Cooney's name. [¶] 3A) Cooney agrees that should he become married, he will obtain a quit claim deed from his spouse. [¶] The decision for disposition of the property shall rest solely with Dennis Cooney." The Sale Agreement was signed by both Richard and Cooney.

Cooney's transfer to Richard of a 50 percent ownership interest in the Property is further reflected in a written agreement signed by Cooney and his wife, Kathryn Cooney, on December 1, 1989, stating that the Property, "which is owned by Richard Gerard and Dennis Cooney, should it be sold, the initial $80,000.00 goes to Richard Gerard. The remainder over and above the initial $80,000.00 is to be divided as per the original Agreement. In case of the death of Dennis Cooney, Kathryn Wayman Cooney will see

that this transaction takes place." It was agreed Richard would be paid the initial $80,000 because this the approximate amount he paid to fund the purchase of the Property.

*(2) Alleged Oral Transfer of Property to James*

James Gerard argues that his 50 percent interest in the Property is not barred by the statute of frauds because his interest is founded solely on Richard's assignment to James of his partnership interest in receiving profits from the sale of the Property. James Gerard acknowledges that "[i]t is undisputed that the Gerards['] claim that they are assignees of Rick Gerard's interest arising from the Sale Agreement between Cooney and Rick Gerard." James Gerard argues that the Sale Agreement "formed a joint venture or resulting trust to share in the profits, not a conveyance of real property interest. As such the Statute of Frauds does not prohibit a verbal assignment from Rick to James of Rick's share." James Gerard has failed to cite any evidence supporting this contention.

As explained in *Kaljian v. Menezes* (1995) 36 Cal.App.4th 573, a joint venture or partnership agreement to share the profits from a transaction involving real estate is not required to be in writing. (*Id.* at p. 585.) However, an agreement to transfer a real property interest from one joint venturer to another contravenes the statute of frauds if not in writing. (*Id.* at pp. 586-587.) Regardless of whether Cooney and Richard formed a joint venture or partnership, it is undisputed the statute of frauds bars James Gerard's interest in the condemnation proceeds because his claim is founded on an oral agreement transfer to James, of Richard's 50 percent ownership interest in the Property under the Sale Agreement. The Sale Agreement is not a partnership or joint venture agreement merely to share the profits from the sale of the Property. Richard's right to profits from

21

the sale of the Property was founded on his purchase under the Sale Agreement of a 50 percent ownership interest in the Property. It is undisputed that, even if the Sale Agreement created a joint venture or partnership, the agreement provided for the sale of a 50 percent ownership interest in real property to Richard, and therefore the statute of frauds applied to Richard's subsequent oral agreement in 1989 to transfer that interest in the Property under the Sale Agreement to James.

*(3) James Gerard's Efforts to Claim Richard's Interest in the Property*

After Richard's death in July 1990, James Gerard initiated various litigation, claiming a 50 percent ownership interest in the Property under the Sale Agreement. In October 2005, James Gerard filed a complaint for partition and imposition of a constructive trust against McMaken. James Gerard also filed a notice of lis pendens giving notice that he had filed an action asserting a real property claim to the Property. James Gerard alleged in his complaint for partition that he and his wife "are the assignees of [Richard] who assigned all his right, title and interest to plaintiff James N. Gerard, a married man, to that certain contract dated March 30, 1987 between Rick Gerardo [*sic*] and Dennis Cooney." James Gerard also alleged that, pursuant to the terms of the Sale Agreement, Cooney sold to Richard a 50 percent ownership interest in the Property for the sum of $40,500. Richard "also loaned to Dennis Cooney the other portion of the purchase price totaling $40,000. Richard Gerard assigned his full 50% to James Gerard who now is the owner of 50% of the profits from the sale of the Subject Property." James Gerard further alleged that James and his wife, "as assignees of Richard Gerard own in Fee Title an undivided 50% interest in and to the Subject Property."

22

James Gerard later amended his partition complaint, omitting the allegation that he had a 50 percent ownership interest in the Property, and replacing it with allegations that James Gerard's interest in the Property consisted solely of a partnership interest in the profits from the sale of the Property.  In February 2009, James Gerard dismissed his complaint for partition after the trial court issued a tentative ruling granting McMaken's motion for summary judgment based in part on the statute of frauds barring James Gerard's claim to an interest in the Property.  James Gerard's amended complaints for partition misconstrue the Sale Agreement as a partnership agreement.  The terms of the Sale Agreement do not create a partnership.  The sale agreement simply states that Richard purchased a 50 percent ownership interest in the Property.

Meanwhile, in October 2007, James Gerard also filed a verified petition for an order to convey real property under Probate Code section 850, and request for equitable relief (probation petition).  James Gerard alleged the following facts.  In 1990, Richard assigned to James the Sale Agreement.  Under the Sale Agreement, Cooney and Meyer agreed to sell Richard a 50 percent ownership interest in the Property and profits derived from the sale of the Property in excess of the $80,000 purchase price.  Richard told James he was "going to immediately unconditionally transfer certain assets to [James].  He then transferred all his significant assets, including all rights, and interests in the profits of the Subject Property and all rights arising out of the Subject Contract [Sale Agreement] to [James].  He communicated clearly and unequivocally that as of that moment he was divesting himself permanently of all rights thereto.  He delivered a copy of the Subject Contract to [James], turned over the keys to a safe deposit box where the original was

23

located and instructed [James] to empty the safe deposit box and take permanent possession of all its contents." James Gerard alleged that from that point onward, James exercised full ownership rights over the Sale Agreement, and the other assets transferred to him, and that Cooney had written multiple documents confirming that he recognized James's ownership interest in the Property.

James Gerard filed an amended probate complaint, retreating from his previous allegations that he had a 50 percent ownership interest in the Property and alleged he was entitled to disbursement of his share of joint venture proceeds arising out the Sale Agreement, which was allegedly a "joint venture agreement." In September 2009, James Gerard dismissed the probate action. James Gerard again attempts to construe the Sale Agreement as something other than an agreement to sell Richard a 50 percent ownership interest in the Property. The Sale Agreement is neither a partnership agreement nor a joint venture agreement. "A joint venture has been broadly defined as an association of two or more persons who combine their property, money, efforts, skill or knowledge to carry out a single business enterprise with the objective of realizing a profit. [Citations.] (*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1054.) The Sale Agreement does not state that the parties to the agreement were creating a partnership or joint venture. Cooney was merely transferring a 50 percent interest in the Property to Richard in exchange for Richard's payment of $40,500.

James Gerard acknowledged in his initial complaint for partition, his initial probate petition, and his answer to the instant eminent domain action that the Sale Agreement was simply a real property sale agreement, in which Cooney agreed to sell to

24

Richard a 50 percent ownership interest in the Property. This real property interest was the basis of James Gerard's allegation in his answer to the eminent domain action that, "[i]n compliance with *Code of Civil Procedure* § 1250.320, [James Gerard] states [James and his wife] are claimants to a fifty percent interest in the real property." James Gerard is bound by his allegation in his answer that the basis of his claim to condemnation proceeds is his 50 percent ownership interest in the real Property. James Gerard's alleged interest in the Property is invalid and unenforceable under the statute of frauds. Furthermore, James testified that, based on the Sale Agreement, he believed Richard orally transferred to James his 50 percent ownership interest in the Property, resulting in James becoming an owner of a 50 percent interest in the Property. James acknowledged that Richard never put in writing or signed a document confirming that Richard was transferring his rights to the Property under the Sale Agreement.

McMaken met her burden of establishing that the Sale Agreement was not a partnership or joint venture agreement to share the proceeds from the sale of the Property. Rather, under the Sale Agreement, Cooney transferred a 50 percent ownership interest in the Property to Richard, and that interest was what Richard orally assigned to James. Since the assignment of Richard's ownership interest in the Property was verbal, and not in writing, it is unenforceable and barred by the statute of frauds as a matter of law.

*(4) James Gerard's Opposition to Summary Judgment*

The burden shifted to James Gerard to produce evidence of specific facts showing a triable issue refuting the statute of frauds bar. James Gerard failed to meet his burden. James Gerard concedes his interest in the condemnation proceeds is founded on an oral

25

agreement. It is undisputed that the oral agreement was to transfer Richard's 50 percent ownership interest in the Property. That oral agreement is unenforceable under the statute of frauds as a matter of law. It is thus undisputed James Gerard has no valid, enforceable interest in the condemnation proceeds.

Apparently recognizing the statute of frauds impediment, James Gerard bases his right to condemnation proceeds on construing the Sale Agreement as a partnership agreement to share the proceeds in the sale of the Property. But James Gerard has failed to provide any evidence supporting this contention. None of the documents cited by James Gerard establish that under the Sale Agreement Richard merely received a partnership interest in the sale proceeds, as opposed to receiving an ownership interest in the Property.

James Gerard relied on the following evidence in support of his contention the statute of frauds did not apply because Richard orally assigned to James his partnership interest in 50 percent of the profits from the sale of the Property, rather than a real property interest in the Property: (1) Cooney's notes prepared in connection with his divorce, regarding potential sale proceeds disbursements related to the sale of the Property. The spreadsheet notes state that $40,000 of the anticipated proceeds would be paid to Richard, with an additional $20,000 paid to Richard's "brother," if found; (2) An accounting statement by Meyer, dated August 1, 1999, of the anticipated profits from the pending sale of the Property. The accounting statement indicates that James had an interest in the Property proceeds based on the notation: "After tax Cash(excluding Rick's Bro).''; (3) Cooney's handwritten instructions, dated September 19, 2001, stating that in

26

his will he was leaving Richard's brother, James, $100,000. Cooney stated that, if James could not be found or had died, the money was not to go to any of Richard's other heirs, including his sons. The money would go to Cooney's sister, McMaken.; (4) Cooney's handwritten note, regarding anticipated sale proceeds from the Property and disbursement of the proceeds, which states "Rick Gerard's brother gets $40,000"; (5) A letter dated April 4, 2003, from McMaken to James, stating that Cooney died and had instructed in his trust to pay James $100,000 as a gift, in remembrance of James's brother, Richard, who was a friend of Cooney.

None of these documents refutes the fact that James Gerard's interest in the Property is barred by the statute of frauds. These documents do not establish that Richard transferred to James a partnership interest or joint venture interest in the Property sale proceeds, as opposed to a 50 percent ownership interest in the Property under the Sale Agreement. James Gerard's reliance on *Bates v. Babcock* (1892) 95 Cal. 479, for the proposition that Richard's interest in the Property sale proceeds was transferable to James in the absence of a written agreement, is misplaced because there is no evidence that the Sale Agreement was merely a partnership agreement to share the proceeds from the sale of the Property. It is undisputed the Sale Agreement transferred a 50 percent ownership interest in the Property to Richard. This ownership interest would have entitled him to 50 percent of the profits from the sale of the Property, regardless of any partnership agreement.

Since there was no written agreement transferring Richard's ownership interest in the Property to James, it is unrefuted that James Gerard's claim to the Property is

27

unenforceable and barred by the statute of frauds. Under Civil Code section 1624, subdivision (a), "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶] (3) An agreement for . . . the sale of real property, or of an interest therein."

In addition, section 1971 provides: "No estate or interest in real property . . . nor any power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, . . ." Civil Code section 1091 further provides: "An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." Under these statutory provisions, Richard could not legally transfer his real property interest in the Property to James, unless he did so by means of a signed writing. It is undisputed there was no signed writing.

Regardless of whether Richard and Cooney formed a partnership or joint venture, it is undisputed Richard had an ownership interest in the Property under the Sale Agreement, and James Gerard's claim to the condemnation proceeds is founded on Richard's oral representation that James was to receive that interest in the Property. James Gerard cannot circumvent the statute of frauds by converting his original claim, that he had an ownership interest in the real Property, to an equitable one based on a

28

partnership interest in the proceeds from the sale of the Property under the Sale Agreement. James testified that he did not believe Cooney and Richard were entering into a partnership agreement when they executed the Sale Agreement. Since the transfer of Richard's ownership interest in the Property to James is unenforceable under the statute of frauds, James Gerard has no right to any of the condemnation proceeds as a matter of law. Therefore summary judgment was proper.

V

DISPOSITION

The judgment is affirmed. Respondents McMaken and the Gerard sons are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:

HOLLENHORST _____
Acting P. J.

MILLER _____
J.

29